## THE TITAN.

## THE HILLS.

(*Circuit Court, S. D. New York.* March 20, 1885.)

1. COLLISION—NEGLIGENCE OF PILOT ACTING AS MASTER—INJURY TO DECK HAND—FELLOW-SERVANTS.

   A deck hand who was not on duty, and had no part in the navigation of the vessel, may recover for an injury caused by a collision due to the negligence of a pilot who was at the time in command; following *Chicago, M. & S. P. Ry. Co.* v. *Ross*, 5 Sup. Ct. Rep. 184.

2. SAME—LOOKOUT.

   It is only when a lookout would have been of no service in guarding against a collision that his absence can be excused.

**3. SAME—PRESUMPTION AS TO OBSERVANCE OF RULES OF NAVIGATION.**

 While ordinarily a vessel has a right to assume that another vessel is not derelict in the observance of the rules of navigation, this presumption is not to be carried so far as to exonerate her from ordinary precautions on her own part, or to excuse her from the consequences of a mistake, when, by slight exertion and without any peril to herself or other vessels, she could certainly avoid hazard.

**4. SAME—LIGHTS—OBSERVATION.**

 The rule requiring lights may as well be disregarded altogether as to be only partially complied with, and in a way which fails to be of any real service in indicating to other vessels the position and course of the one carrying them.

In Admiralty.

*Owen & Gray* and *Peter Cantine,* for appellants.

*Peckham & Tyler,* for appellee.

WALLACE, J.   Upon the proofs it seems perfectly clear that both the Titan and the Hills were in fault for the collision by reason of which the libelant was injured.   The collision took place about 7 o'clock in the evening of September 22, 1882, in the Hudson river, about 1,000 feet out from the Jersey shore, somewhat above the Pavonia ferry slip.   The tide was ebb, running about three miles an hour; the wind was light, and the night was gray but fairly clear.   The Titan was proceeding up the river bound for Hoboken, against the tide, at a speed of about four miles an hour, on a line with the westerly shore but heading in somewhat towards the shore, towing the float Mohawk, which was heavily loaded with two rows of railway cars, and was lashed to her starboard side.   The float as lashed projected some 20 feet beyond the bow of the Titan, and had an umbrella or shed roof which sloped on each side to within about six inches of the top of the cars.   This umbrella obscured the green light on the starboard side of the Titan so that it did not show a uniform and unbroken light from right ahead to two points abaft the beam on the starboard side, and there was no green light on the starboard side of the float.   The Hills had left the New York side at Twenty-third street bound for Jersey City, light, and proceeded on her course down the river and bearing to the westward at a speed of about 15 knots with the tide.   She had no lookout, but her pilot, who was acting at the time as master, and was at the wheel in the pilot-house, saw the Titan when nearly half a mile away.   He was able to see the vertical white lights of the Titan and the white light of the float, but he was unable to see the green light of the tug because it was obscured from view by the cars and the umbrella of the float.   Not seeing the green light he assumed the tug and float were going down the river, and kept rapidly approaching them at full speed.   Soon after seeing the tug and float he observed the ferry-boat Gould, which had left her ferry at Hoboken and was coming by to the westward of the Titan about 150 feet away, and passed across the Titan's bow, but as he supposed across her stern. The Gould gave a signal of two whistles to the Hills and the Hills responded by a like signal.   The Titan supposing the signal of the Hills in answer to the Gould was a signal to herself answered the Hills signal with two whistles, but the pilot of the Hills supposed

these were a signal to the Gould. The Hills starboarded somewhat for the Gould and passed her on her port side a couple of hundred feet away, and then her pilot when within 100 feet of the Titan, still assuming that the Titan was going down the river and seeing that a collision with her was imminent, hard ported his wheel to go under her stern. The result was that the Hills came into collision with the bow of the float, and the shock was so severe that the libelant, who was on the Hills, was thrown down and his skull was fractured. The Hills could have avoided the collision with proper effort at the time she came abreast the Gould, being then about 100 yards away from the Titan. She maintained her full speed from the time her pilot first saw the Titan to the time of the collision.

If the pilot in charge of the Hills was warranted in assuming that the Titan was going down the river as he was overtaking and intending to pass her, he assumed the responsibility of passing her safely, and unless he allowed ample distance for the purpose, he was bound to slacken speed, and if need be to reverse in order to avoid collision. In this behalf it was his duty to maintain a diligent observation in order to govern himself as circumstances might require. Instead of doing this, he found his vessel within 100 feet of the Titan, bearing upon her float amid-ships, and sought to save a collision by the maneuver *in extremis* of hard porting his wheel. For a distance of nearly half a mile his view was unobscured, except for the brief interval when the Gould was between him and the Titan. Probably he relied upon his first observation when he concluded the Titan was going down the river, and relying upon this he permitted his attention to be distracted by watching the Gould. Undoubtedly the appearance of the Titan and her float with their vertical white lights apparently in a cluster, while the vessels were approaching each other, with no background by which to determine readily in which direction the lights were moving, and no green or red light to indicate that she was approaching, was well calculated to mislead the pilot of the Hills. But it seems impossible to believe that the real situation would not have been discovered if proper diligence had been exercised. The Hills should be held in fault for not having a lookout.

It is only when a lookout would have been of no service in guarding against a collision that his absence can be excused. The situation here was peculiarly one in which the observation and judgment of a lookout might have been useful. It was one of those doubtful situations in which different points of observation might suggest different conclusions and in which two men might form a different opinion from the same stand-point. There was enough in the rapidity with which the vessels were approaching each other to attract attention and suggest the probability that they were not going in the same direction. The Hills was also in fault for pursuing such a high rate of speed at night, and with the tide, upon waters customarily traversed by numerous vessels, when she was rapidly nearing a tow.

The situation required a high degree of vigilance and circumspection, yet she disregarded every rule of prudent navigation in reliance upon an hypothesis which might be erroneous, and proved to be so.   While ordinarily a vessel has a right to assume that another vessel is not derelict in the observance of the rules of navigation, this presumption is not to be carried so far as to exonerate her from ordinary precautions on her own part, or to excuse her from the consequences of a mistake, when by a slight exertion and without any peril to herself or to other vessels she could certainly avoid hazard.   There was ample room, plenty of time, and no intervening obstacles in the way of perfect safety if the Hills had slackened speed while she was passing the Gould.   After this, it was obvious that the danger of collision with the Titan was imminent, and she should have been stopped and reversed.   Instead of doing this, the pilot took the chances of a maneuver which could only be justified by the certainty that he was correct in supposing the Titan was going away from him.

The Titan was in fault for so locating her starboard light that it was not visible, as required by the rules.   No doubt is entertained that it was obscured by the umbrella of the float and by the cars on the float forward of the place on the tug where it was located, so that it was not visible to the pilot of the Hills.   The rule requiring lights may as well be disregarded altogether as to be only partially complied with, and in a way which fails to be of any real service in indicating to another vessel the position and course of the one carrying them.

The libelant was a deck hand upon the Hills, but was not at the time on duty, and had no part in her navigation.   The pilot was in command.   Within the case of *Chicago, M. & St. P. Ry. Co.* v. *Ross,* 5 Sup. Ct. Rep. 184, decided recently by the supreme court, he was not a fellow-servant of the libelant; and the latter is entitled to recover for the injuries he sustained by the collision against the Hills as well as the Titan.   Treating the pilot as the master, he was responsible for the management and navigation of his vessel.   He was negligent in failing to have a lookout stationed where he ought to have been, and negligent otherwise.   The collision was solely the result of his negligence, and the libelant had no part or lot in it.

The decree of the district court is affirmed, with interest and costs of the appeal.