THE NETTIE QUILL.

(District Court, S. D. Alabama. July 10, 1903.)

No. 1,017.

1. SHIPPING—CONTRACT OF AFFREIGHTMENT—CARRIAGE OF GOODS ON BARGE.

The owner and master of a steamer engaged in making regular trips between river ports contracted to transport from one of such ports to another, for a stated charge, a locomotive engine. The barge owned and used by him on such trips not being suitable, it was agreed that the owner of the engine should furnish a barge on which to load the same, which was to be returned by the steamer. The steamer issued a bill of lading in the usual form for the barge and engine, and lashed the barge to her side for the voyage. Held, that the contract was one of affreightment, and not of towage.

2. SAME—LOSS OR DAMAGE TO CARGO—HARTER ACT.

Under the Harter Act of February 13, 1893, c. 105, § 3, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946], a steamer which was seaworthy and properly manned, equipped, and supplied, carrying goods between two ports of the United States, is not liable for loss or injury to such goods by reason of the barge on which they were loaded striking an obstruction in the river; the loss in such case resulting either from a danger of the river or from a fault or error in navigation or in the management of the vessel.

3. TOWAGE—INJURY OF TOW—NEGLIGENCE OF TUG.

Under the settled rule that a vessel engaged in a towage service is bound to the exercise of only ordinary care and skill, a steamer engaged in towing a barge is not liable for an injury thereto by reason of its striking a log which formed an obstruction in the channel of the river, but was not shown to have been there for any length of time, and its presence was unknown to any officer of the steamer, and where at the time of the injury, which was at night, the mate, then in charge of the vessel, was properly stationed, and acting as lookout, and after he saw the obstruction all reasonable and proper measures were taken to prevent the injury.

In Admiralty. Suit in rem to recover for injury to property in shipment.

Stevens & Lyons, for libelant.
Gregory L. & H. T. Smith, for claimant.

¶ 3. Statutory exemption of shipowners from liability, see note to Nord-Duetscher Lloyd v. Ins. Co. of North America, 49 C. C. A. 11.

TOULMIN, District Judge. The libel in substance alleges that the steamboat Nettie Quill was a river steamboat, plying on the Mobile and Alabama rivers between Mobile, Ala., and points above Blacksher's Landing on the Alabama river, and was engaged in carrying passengers and cargo for hire as a common carrier; that on the 13th day of May, 1902, the master of the said steamboat, for the boat, agreed to carry from Mobile to Blacksher's Landing a certain steam locomotive belonging to libelant for a stated amount of freight, if libelant would furnish a barge on which to transport the same, said master also agreeing to bring said barge back to Mobile on the return trip of the steamboat. The barge was procured, the locomotive loaded thereon, and both delivered to said steamboat, which received the same, lashed the barge to her side, and thus proceeded up the river on the evening of said 13th day of May, 1902. The clerk of the steamboat delivered to libelant a bill of lading for said barge and locomotive, which bill of lading is annexed to the libel as a part thereof, and is in the following words and figures, to wit:

Shipped, as per margin, in good order, (bagging, rope, ties and old damage excepted) on board the Steamboat Nettie Quill and Barges, whereof John Quill is Master, bound for to be delivered in like good order, (the damages of the River and Fire excepted) to Blacksher Co or Assigns, on paying freight and charges specified below. In witness whereof, I, the Clerk of said Boat, sign this Bill of Lading, in duplicate, the 13th day of May 1902.

|   Landing.    |      Marks.       | On Whose Account. |
|---------------|-------------------|-------------------|
| From Mobile to Blacshers. | One barge with locomotive. | Blacksher Co. |

[I. R. Stamp One Cent.]                                    H. C. King.

The libel further alleges that prior to the delivery of said bill of lading there had been no agreement as to the terms of said carriage, except that said steamboat was to carry said locomotive to Blacksher's Landing for an agreed amount of freight, libelant to furnish a barge for that purpose, and said steamboat to bring the barge back to Mobile on her return voyage; that shortly after dark on the evening of said 13th day of May, as the steamboat and barge proceeded up the river, the barge ran against what is known as a "deadhead," which is a log, one end of which sinks and the other end floats: that it was a pine saw log about 40 feet long and 24 inches in diameter at the small end, which end floated so that at least a foot thereof was above the water; that the said log was well out in the channel of the river; and that at the time it was struck by the barge the moon was shining very brightly, and the water was calm, so that such an object as this log, with the exercise of proper care, could have been seen and distinguished at a long distance, and at a much greater distance than was necessary for said steamboat to change her course and steer clear of the obstruction, or, if necessary, to stop entirely. By the impact with the log the barge was badly damaged, soon filled with water, careened, and sunk, at the same time dumping the locomotive into the river, and which was also greatly damaged. This suit is brought to recover the damages sustained by libelant by reason of said accident. The allegations of the libel are substantially sustained by the evidence, which is without conflict, except on one or two points, which it is not necessary to notice in the aspect of the case now to be considered.

The first question presented is whether, from the allegations of the libel and on the evidence, the contract between the libelant and the steamboat was or not a contract of affreightment? I find from the allegations of the libel and from the evidence that the contract was one of affreightment. A contract of affreightment is a contract with a shipowner to hire his ship, or part of it, for the carriage of goods or other property. Such a contract generally takes the form of a charter-party or of a bill of lading. Mande & P. Merc. Shipp. 227; Smith's Merc. Law, 295; The Delaware, 14 Wall. 600, 20 L. Ed. 779. In this case the contract took the form of a bill of lading. The contract is evidenced by a bill of lading, which is a receipt for the property shipped, and a promise or undertaking to transport and deliver the same as therein stipulated. The Delaware, and other authorities supra. In this case the libelant made a contract with the steamboat, through her master and owner, for the carriage of the locomotive; and it appears from the evidence that her barge, which she usually carried with her to aid in the transportation of her cargo, was not suitable, for reasons stated, for the carriage of the locomotive, and it was suggested by the master of the steamboat that libelant furnish him with a suitable barge for the purpose. The barge was furnished. It was lashed to the steamboat, and became thereby as much a part of her as her own barge was, for the purposes of the particular voyage. A stated amount of freight was agreed to be paid by the libelant, and the master of the steamboat undertook and agreed to carry the locomotive to Blacksher's Landing, and there deliver it as shown by the bill of lading. The contract was one of affreightment. The contract being a contract of affreightment, if the loss arose from dangers of the river, or resulted from faults or errors in navigation or in the management of the steamboat, then, under the act of Congress known as the "Harter Act," the steamboat and her owners would not be responsible for the damage or loss. 3 U. S. Comp. St. 1901, p. 2946 (Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445):

"If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make his vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel her owner or owners * * * shall become or be held responsible for damages or loss resulting from faults or errors in navigation or in the management of said vessel, nor shall the vessel, her owner or owners * * * be held liable for losses arising from dangers of these or other navigable waters," etc.

This act materially modifies the law relating to the carriage of goods. That the act applies to vessels transporting property between ports in the United States, see The E. A. Shores, Jr. (D. C.) 73 Fed. 342, and authorities therein cited. From the argument of libelant's counsel it would appear that he considers the contract to have been a towage contract. He does not say so directly, but such is the effect of his argument. His contention is that the steamboat was negligent in failing to have a proper lookout; and that it failed to exercise proper care in her navigation, by the exercise of which she could have seen and distinguished the log in time to have avoided the collision with it, either by steering clear of it or by stopping entirely. If I am in error in my finding on the evidence, and the

contention of the learned counsel is sustained by the evidence in the case, still the libelant cannot recover under this libel. It would have to be amended to correspond with the evidence. It should show by its allegations of fact a contract of towage and the negligence complained of. If I was persuaded that the contract was one of towage, and was satisfied by a preponderance of the evidence that it was negligently performed on the part of the steamboat, I would consider a proposition to amend the libel for the purpose of a decision of the case now, or would dismiss this libel without prejudice. If the contract was one of towage, the steamboat was bound to exercise ordinary care and skill in its performance, and would be liable if she failed to do so. Such failure would be negligence. The burden is on the libelant to establish the negligence, at least by a preponderance of evidence. A towage service is aid rendered in the propulsion of a vessel. It is the employment of one vessel to expedite the voyage of another vessel. 1 W. Robinson, 177; 3 W. Robinson 68; McConnochie v. Kerr (D. C.) 9 Fed. 53. Where is the evidence that establishes a contract for any such service? But a contract of towage requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services. The towing vessel only undertakes to exercise ordinary care and skill in performing the service, but it is bound to use ordinary care and skill for the safety of the tow. The Margaret, 94 U. S.,494, 24 L. Ed. 146; The Webb, 14 Wall. 406, 20 L. Ed. 774; The A. R. Robinson (D. C.) 57 Fed. 667. If the towing vessel negligently strikes an obstruction, the presence of which is well known, or may reasonably be expected, the towed vessel may recover for damages sustained. Pettie v. Boston Towboat Co., 49 Fed. 464, 1 C. C. A. 314. But it is well settled that a towing vessel is not negligent when the tow strikes an unknown obstruction in a regular channel. The Pierrepont (D. C.) 42 Fed. 687. "The towing vessel is liable for striking upon obstructions which ought to be known to men experienced in its navigation, but not for those which are unknown." Hughes on Adm. p. 123. The evidence showed that the "deadhead" in question was not well or generally known to navigators of the river, and that it had been but a short time in the channel. The evidence was uncertain as to whether it had been there several days, or even one day, before the accident, not being harmonious on this subject; and there was also conflict in the evidence as to how high the log stood out and above the water and was visible, and at what distance visible on that night, when seen before the collision. However this may have been, it is without dispute that neither the master, mate, nor pilot of the steamboat had any knowledge or notice of this "deadhead" until immediately before the collision, and within a short distance of it, when such means as were reasonable and proper were used by the steamboat to avert the collision.

The evidence further showed that Campbell, the mate of the steamboat, was on watch at the time of the collision, and that he was stationed at the forward end of the hurricane deck. He was acting master at the particular time, the master having gone below

to supper; but no duties as such master devolved on him during the time to divert him from his duties as lookout. As soon as he saw the log, he gave due notice of it to the pilot. I do not find as a fact that the absence of a lookout other than Campbell, the acting master at the time, contributed to the collision; nor do I find, that he did not properly perform his duties; nor that he could have performed the duties of a lookout better than he did; nor that any different manner of performing those duties either by him or by an additional lookout could or would have made any difference in the result; nor that the log could or would have been seen by the steamboat any sooner that it was seen. The absence of a lookout is not material where the presence of one would not have availed to prevent a collision. The Titan (C. C.) 23 Fed. 413; The Fannie, 11 Wall. 238, 20 L. Ed. 114; The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122, 34 L. Ed. 687; The Blue Jackett, 144 U. S. 390, 12 Sup. Ct. 711, 36 L. Ed. 469; The Farragut, 10 Wall. 337, 19 L. Ed. 946.

The learned counsel for libelant has cited several authorities on this point, which, in my judgment, do not apply, because the facts and circumstances of those cases are unlike those in this case. In the case of W. H. Simpson, 80 Fed. 153, 25 C. C. A. 318, the court said:

"The law which governs this case is well settled. The difficulty arises not in the law, but in the ascertainment of the facts from the evidence, which, in cases like the present, is usually conflicting. There is here no negligence arising from the facts of the disaster, and the burden of proof is upon the libelant to satisfy the court upon the evidence presented and upon the reasonable probabilities of the case that the tug [steamboat] was guilty of the fault charged through failure to exercise ordinary skill and care."

I am not satisfied, upon a careful consideration of all the evidence in this case, that there was a want of ordinary skill and care upon the steamboat. My conclusion, therefore, is that the libel must be dismissed.