RALLI et al. v. NEW YORK & T. S. S. CO.

(Circuit Court of Appeals, Second Circuit. April 30, 1907.)

No. 248.

**1.** SHIPPING—DAMAGE TO CARGO—EXEMPTION FROM LIABILITY UNDER HARTER ACT.

Section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which exempts the owner of any vessel transporting property from liability for loss or damage thereto resulting from faults or errors in navigation, or in the management of the vessel, if he has exercised due diligence to make such vessel in all respects seaworthy and properly manned, equipped, and supplied, applies only to a vessel after the voyage has commenced, and cannot be invoked by an owner to relieve him from liability for loss of cargo through the careening and sinking of a vessel at the pier before she was fully loaded, due to the negligence of a watchman in failing to adjust her lines to permit her to drop with the tide.

[Ed. Note.—Statutory exemptions of shipowners from liability, see note to Nord-Deutscher Lloyd v. Insurance Co. of N. A., 49 C. C. A. 11.]

**2.** SAME—LIMITATION OF LIABILITY—PENDING FREIGHT.

Under Rev. St. § 4283 [U. S. Comp. St. 1901, p. 2943], which provides that the liability of the owner of a vessel for loss or damage to cargo occurring without his privity or knowledge "shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending," pending freight is limited to that due to or to be earned by the particular vessel through whose fault the loss occurred, and the fact that goods when lost or injured were being transported under through bills of lading upon different vessels of the same owner does not require a surrender of the freight earned by a different vessel in the course of such shipment.

**3.** SAME.

Where a lighter sank at a pier while being loaded, injuring a large part of her cargo, the fact that the uninjured cargo was then transferred by her owner to another vessel, and that such lighter. did not deliver any part of it, does not relieve the owner in proceedings for limitation of his liability from the necessity of surrendering as "pending freight" the freight which she would have earned if she had carried the cargo.

**4.** SAME—DAMAGES RECOVERABLE FOR LOSS OF CARGO—SALVAGE EXPENSES OF CARRIER.

It is the duty of a carrier of cargo which meets with disaster through the fault of the vessel to do what he can to minimize the damage, by which he profits as well as the cargo owner, and he is not entitled to a deduction of expenses so incurred from the damages recoverable by the cargo owner by reason of his loss.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, awarding to the libelants, as owners of a shipment of cotton, certain damages consequent upon the sinking of the lighter O. M. Hitchcock, while lying moored to Pier 19, East river, before daylight on the morning of December 30, 1901. The cotton was shipped under

through bills of lading at Galveston on respondent's steamer Alamo for transportation to New York, there to be delivered, "being lightered, ferried, or carted at cargo owner's risk," to the Phenix Line for transportation to Ghent, Belgium. The Alamo reached New York and discharged 700 bales in good order at Pier 19, East river, where respondent on Saturday, December 28, 1901, loaded 681 of said bales (with 14 bales of another shipment) on its lighter O. M. Hitchcock for literage to the Phœnix Line Pier at Hoboken, N. J. More cotton, including the 19 remaining bales of this shipment, was to be loaded on the lighter, and she lay at Pier 19 Saturday night and Sunday. Some time between 3:30 and 4 a. m. on Monday morning she careened and sank, causing the loss of 4 bales and damage to 505 bales of libelant's cotton. The cause of the accident was the negligence of the respondent's watchman, who was in sole charge of the Hitchcock and of another lighter, in not loosening the mooring lines when the tide began to fall, so that there was not sufficient slack on the lines to permit the barge to drop with the tide. The undamaged bales, 172 in number, together with the 14 bales of another shipment, were then loaded on another lighter of the respondent, delivered to the Phœnix Line, and carried to Belgium. The 505 damaged bales, being not of sufficient value to warrant the expense of exportation, were by respondent carried to Erie Basin, spread out to dry, and finally sold at auction. Some of this damaged cotton had been taken from the deck of the Hitchcock, some from the adjoining slip, and some had drifted down the East river and been rescued by the efforts of respondent and of independent salvors. The net proceeds of sale less freight on same from Galveston to New York were paid over by respondent to libelants. The district judge held that respondent was entitled to the benefit of the limited liability act, but that it was not entitled to set off any amounts expended by it, in saving libelants' cargo; and ordered a reference to ascertain the amount of libelants' damage and the value of respondent's interest in the barge and freight then pending. The referee's report thereon was subsequently confirmed.

Frederick M. Brown and Butler, Notman & Mynderse, for appellant.

Lawrence Kneeland, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). Some of the questions which were argued in the District Court have been eliminated, and the following only are submitted for determination here.

1. It is contended that respondent should be given the benefit of the third section of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which reads:

"3. If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel, her owner or owners, agents or charterers, shall become or be held responsible for damages for loss resulting from faults or errors in navigation or in the management of said vessel."

Manifestly this section deals with a specific vessel; i. e., the vessel on which the merchandise is being transported. When the entire transportation is made up of successive stages by successive vessels, this section applies to the particular vessel whose navigation or management has been faulty or erroneous. In the case at bar, then, we are concerned, not with the Alamo, but with the Hitchcock. We are of the opinion that respondent cannot claim the benefit of the section above quoted for the reason that the voyage had not commenced, the

cargo was not yet all on board, nor the vessel ready to sail. We find no authority either way on this proposition. The citations on the appellee's brief deal with different questions; but the language of the section so clearly contemplates a distinction between the preparation for a voyage, and the management of the same after it has begun, that, in the absence of adverse authority, we feel no hesitation in adopting this construction.

2. The District Court found the value of the pending freight to be 19/ cents per 100 pounds. The through freight rate from Galveston to Ghent was 37 cents, and it was shown that the Phœnix Line was to receive 18 cents of this amount for its share. It further appeared that the price of lightering in New York Harbor between the two piers was 3 cents, leaving 16 cents for the transportation from Galveston to New York.

The District Court held that there should be surrendered as the value of "pending freight" 19 cents per 100 pounds for the cotton on the Hitchcock which was delivered sound, or sold in a damaged condition, upon the theory that the adventure in which the Hitchcock was employed was completing the voyage from Galveston to the Phœnix Line, treating both steps in the transportation as a single adventure. It must be remembered that the goods were not lost on or by any act of the Alamo, but solely through the fault of the Hitchcock while on board the latter vessel. The circumstance that the same individual owned both vessels is incidental merely, and not important. The language of the statute is plain and unambiguous—the liability of the owner or owners "shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending." In the case at bar "such vessel" was the Hitchcock, and "her freight then pending" was what she was to earn by transporting the goods from New York to Hoboken, N. J., which the evidence shows was 3 cents per 100 lbs. We have examined the authorities cited by the libelant (Allen v. Mackay, 1 Sprague, 219, Fed. Cas. No. 228; the Main v. Williams, 152 U. S. 132, 14 Sup. Ct. 486, 38 L. Ed. 381; the Giles Loring (D. C.) 48 Fed. 473; Whitcomb v. Emerson (D. C.) 50 Fed. 128; The Abbie C. Stubbs (D. C.) 28 Fed. 720; The Jane Grey (D. C.) 99 Fed. 582; Pacific Coast Co. v. Reynolds, 114 Fed. 877, 52 C. C. A. 497; La Bourgogne, 139 Fed. 433, 71 C. C. A. 489), and find in them no authority for extending the words of the statute "her freight then pending" beyond their plain, natural, and ordinary signification. What Congress intended and undertook to do was to relieve the owner of "such vessel" upon giving up her value and her earnings. That the same owner may have earned something more by the operations of some other vessel which he happens to own is not material.

The respondent contends that there was no "pending freight" of the Hitchcock, because she never made delivery of any of the cotton to any one. She was in no way damaged by her mishap. As soon as she was righted and pumped out, she was in condition to take the cotton to Hoboken. We are of the opinion that the owner could not relieve himself from the obligation of the statute merely by substituting some other boat of his own as the vehicle of transportation,

and for the cotton thus delivered at Hoboken he must give up 3 cents per 100 pounds. As to the cotton which was taken to the Erie Basin, dried out, and sold, it is wholly immaterial what the facts really are or what may be their legal effect. The respondent cannot be heard to question the proposition that the Hitchcock earned her freight because respondent has deducted the amount of that freight from the proceeds of sale and accounted only for the balance. Whether it pays that amount as "pending freight" under the limited liability statute, or as money improperly retained out of the proceeds of libelant's cotton, is a matter of no importance.

As to the 16 cents per 100 pounds for freight from Galveston to New York on the damaged cotton, it appears that the propriety of the decision not to export, but to condition by drying and to sell at auction, was not disputed by libelant. The bills of lading provided that, in the event of sale because of damage or otherwise at any port short of their ultimate destination, out of the proceeds thereof the pro rata freight for that part of the transportation which may have been completed shall be due and payable. Freight pro rata itineris was therefore properly paid to the owner of the Alamo out of the proceeds of sale of the damaged cotton.

3. Respondent further contends that it should be allowed to recoup two items of expense: (1) For moneys paid out in rescuing the cotton from the river; and (2) expenses incurred in drying the cotton and putting into an improved condition for the auction. It is the duty of the carrier of cargo which has met with such a disaster to do what he can to minimize the loss. By such exertions he benefits, as well as the cargo owner. The argument now advanced is that a refusal to allow such deductions from the surrender value would tend to discourage exertions by the carrier to minimize damage, when it is evident that the damage might exceed the value of the vessel. The point made is not supported by authority, and we concur with the district judge in the conclusion that under Fleming v. Lay, 109 Fed. 952, 48 C. C. A. 748, and The Pine Forest, 129 Fed. 700, 64 C. C. A. 228, 1 L. R. A. (N. S.) 873, the deductions were properly disallowed.

The cause is remanded to the District Court, with instructions to modify the decree in conformity to this opinion. Since the appellant has prevailed in part only, there should be no costs of this appeal.

NOTE.—The following is the opinion of the District Court by Holt, District Judge:

HOLT, District Judge. I think that the cause of the accident was the negligence of McMahon, the watchman, in not loosening the mooring lines when the tide began to fall, so that there was not sufficient slack on the lines to permit the barge to drop with the tide; that the respondent is sued in this action and is responsible, if responsible at all, not as carrier of the cotton on the through bill of lading, but as owner of the barge, in the same manner as another owner of a barge would have been if employed to lighter the cotton in New York Harbor; that no provisions in the bill of lading exempt the respondent from liability, because, first, the respondent is not sued in respect to any obligations governed by the bill of lading, but simply as owner of the barge, and, second, if it were liable under the bill of lading, any provisions in it exempting the

respondent from liability for negligence would be void under the general rules of law; that the Harter act has no application to this case, because that act, in my opinion, applies only to vessels transporting merchandise on a voyage from one port to another, and not to mere harbor craft moving merchandise from one place to another in the same port, as is shown by its express provisions, and by the fact that it was passed in order to prevent the injustice caused to the owners of American vessels, in competition with owners of English vessels, from the fact that by the English law provisions in bills of lading exempting the owners from liability for negligence were valid (The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771; The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130); and therefore, in my opinion, the act is to be construed as applying only to vessels carrying merchandise on voyages from one port to another for which formal bills of lading are usually issued; that the principal officers or the manager of the respondent had no privity or knowledge of the negligence which caused the damage, and therefore it is entitled to the benefits of the limited liability act, but that the respondent is not entitled to set off any amounts expended by it in saving the libelant's cargo (Fleming v. Lay, 109 Fed. 952, 48 C. C. A. 748; The Pine Forest [D. C.] 119 Fed. 999).

My conclusion is that there should be a decree for the libelants, and a reference to ascertain the amount of the libelants' damage and the value of the respondent's interest in the barge and freight then pending, and that the libelant should ultimately have judgment for the amount of such damage, if it is less than the value of such barge and freight, or, if it is greater, for an amount equal to the value of the barge and freight, with costs.