BALTIMORE & BOSTON BARGE CO. v. EASTERN COAL CO. et al.†

(Circuit Court of Appeals, First Circuit.   April 10, 1912.)

No. 951.

**1. SHIPPING (§ 54*)—LOSS OF VESSEL BY TIME CHARTERER—NEGLIGENT TOWAGE.**

Where a time charter of a coal barge, by which the charterer became the bailee of the vessel, required the owners to supply the barge with a 10-inch 200-fathom hawser, and at the time of her loss through the negligent towage of the charterers' tug she had two hawsers aboard, one of which was new, it was for the tug to determine which should be used: and, having used the old one, the charterer cannot avoid liability for the loss of the barge on the ground that the hawser was old and worn and that its parting contributed to the loss.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. § 54.*]

**2. SHIPPING (§ 205*)—LOSS OF CARGO OF TOW—HARTER ACT.**

Section 3 of the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), was not based upon a broad principle, but was intended only to govern the relations between a vessel and the cargo with which she is herself laden, and does not exempt the owner of a tug from liability for loss of the cargo of a barge through negligent towage, although such owner was also the owner pro hac vice of the barge, and was in fact the carrier of her cargo.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 641, 642; Dec. Dig. § 205.*]

Appeal from the District Court of the United States for the District of Massachusetts.

Petition in admiralty for limitation of liability by the Baltimore & Boston Barge Company, owner of the steam tug Murrell. From a decree in favor of the Eastern Coal Company and others, claimants, petitioner appeals.   Affirmed.

Frederic Cunningham and Edward S. Dodge, for appellant.

Edward E. Blodgett (Blodgett, Jones & Burnham, on the brief), for appellees.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge.   This appeal arose out of a decision of the District Court for the District of Massachusetts, holding the steam tug Murrell liable for loss of the coal barge West Virginia and her cargo of coal, by grounding on a shoal near or at Pollock Rip.   The tug had two barges in tow, each loaded with coal.   First was the Ivie, towed aft of the tug in the usual manner on a long hawser; and the West Virginia followed the Ivie on another long hawser.   The District Court held the tug liable for the loss of both the barge West Virginia and her cargo of coal.

The West Virginia was chartered to the owners of the tug by a charter of which we need not give details, unless in two or three particulars.   The charter was in the usual form of the chartering of a vessel where the charterer becomes the bailee of the vessel, but the own-

ers of the chartered vessel furnished the officers and crew and some stores, and retain the necessary room for the crew and storage for the provisions. It provides that the owners shall insure the barge, of, which no notice is taken in this case so far as we discover. It also provides that the barge shall be in seaworthy condition, and be furnished with a "10-inch hawser 200 fathoms in length"; also that her owners shall maintain the barge in a thoroughly efficient state during "the period of service." The charter was for a specified period of time. It was free from the assumption of the special risks found in the charter in Sun Association v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366; so that the familiar obligations stated in that case at 183 U. S. 654, 22 Sup. Ct. 240, 46 L. Ed. 366, apply here. The tug was bound, according to the usual rule, to use ordinary care to restore the barge at the termination of the charter. Therefore, if the wreck of the barge was through the negligence of the owners of the tug, the tug and her owners are liable therefor, except as relieved by statutes. The cargo, for whose loss the tug was held liable by the District Court, belonged to a third party.

With reference to the question of fault on the part of the tug, we are clearly of the opinion that the District Court was right. We need refer only to two topics. One is the claim that the shoaling was of late origin, and perhaps not known generally; but the circumstances show that the tug was put upon obligation to inform itself in reference to the fact of the shoaling, and had sufficient opportunity in that direction. Therefore, under settled rules determining the relations of tug and tow, the condition is the same as though the tug had actual knowledge thereof.

[1] Also it is claimed that the hawser aboard the West Virginia was old and worn, and parted on account of the fact that the West Virginia grounded, and that this was a cause which contributed to her final loss. The burden of the evidence is that the hawser was of the quality and size demanded by the charter; but, in addition to that, there was an entirely new hawser aboard the West Virginia, which had never been used, and it was for the tug to determine whether she would make use of the old hawser or the new one. Its decision to make use of the old was conclusive against it on the facts of the case. We think we need not dwell further on the large amount of testimony in the record, as, after listening to arguments at full length, we are of the opinion that we would not be satisfied any better with any other conclusion than with that of the District Court.

[2] The Harter Act is set up as a defense. It is clear that it affords none against the claim of the barge, the West Virginia, because the relations there were as between the charterer and the owner of the vessel, as to which clearly the Harter Act does not apply. Its application to the relations which existed between the tug and the cargo of the West Virginia has never been settled by the Supreme Court. The decisions of that court on this topic are The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771, The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130, and The Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801, affirming the same case decided by the

Circuit Court of Appeals for this circuit in 74 Fed. 899, 21 C. C. A. 162. Neither of them decides the question involved here; but they give a somewhat narrow effect to the Harter Act.

We cannot overlook the fact that in this case the relations of the tug to the cargo of the West Virginia were not merely those of tug and tow, but perhaps, also, those of the owner of a vessel and the owner of a cargo; so that, at common law, the liability of the tug was not merely for ordinary care, but perhaps that of the guaranty which a common carrier gives the person whose merchandise he transports. Consequently, if in this case the loss of the cargo had arisen through errors in the navigation of the barge West Virginia, arising aboard of her, the Harter Act would perhaps apply. It cannot, perhaps, be denied that the tug was "transporting" the cargo of the West Virginia; nor can it, perhaps, be denied that the relations of the tug to the cargo were within the equity of the statute, which was intended to relieve seagoing vessels from the extreme liability at common law of carriers towards the owners of the merchandise carried. These are very serious questions, as a very large portion of the coal traffic now on the Atlantic coast is conducted in the manner shown here. The owners of the tugs are transporting cargoes for which they receive freight; not merely towing barges. Of the latter they are either absolute owners or owners pro hac vice, as the owners of the tug were in this transaction; and for all questions under statutes of this character, it is settled that ownership absolutely and pro hac vice are the same. As we have said, the Supreme Court has treated the Harter Act somewhat strictly, and the opinion in behalf of that court in The Irrawaddy, 171 U. S. at pages 195 and 196, 18 Sup. Ct. at page 834, 43 L. Ed. 130, says:

"Upon the whole we think that, in determining the effect of this statute in restricting the operation of general and well-settled principles, our proper course is to treat those principles as still existing, and to limit the relief from their operation afforded by the statute to that called for by the language itself of the statute."

Clearly on its face the Harter Act had in mind, not so much a broad principle, as only the relations which exist between a vessel and the cargo with which she is herself laden. From that point of view there is enough to justify the following expression in the opinion in behalf of the Circuit Court of Appeals in Ralli v. N. Y. & Y. S. S. Co., 154 Fed. 286, 83 C. C. A. 290, decided on April 30, 1907, by a strong court:

"Manifestly this section deals with a specific vessel; i. e., the vessel on which the merchandise is being transported."

This refers to the third section of the Harter Act, but inevitably it must be taken to concern the whole of the statute. Consequently, in any view, we are obliged to sustain the conclusions of the District Court.

The decree of the District Court is affirmed, with interest; and the appellees recover their costs of appeal.