# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### THE COASTWISE.

#### (Circuit Court of Appeals, First Circuit.   June 8, 1916.)

#### No. 1187.

1. TOWAGE ⊗➔11(1)—LOSS OF CARGO OF TOW—LIABILITY OF TUG—HARTER ACT—"SINGLE VESSEL."

A tug and a laden barge in tow, although both the property of the same owner, do not constitute a "single vessel," within the meaning of Harter Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 (Comp. St. 1913, § 8031); nor can the tug be considered as transporting the cargo of the barge, so as to be exempted by said section from liability to the cargo owner for loss resulting from faults or errors in navigation, if due diligence has been used to make her seaworthy and properly manned, equipped, and supplied; and especially is this true where the two vessels are operating under separate contracts, the bill of lading for the cargo having been made by the barge.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11, 14, 16, 21; Dec. Dig. ⊗➔11(1).]

2. TOWAGE ⊗➔11(5)—STRANDING OF TOW—LIABILITY OF TUG—DEVIATION FROM PROPER COURSE.

A barge, being towed up the New Jersey coast at night, was stranded on Brigantine Shoal. The wind was fresh, and tended to set the tow toward the shore; there were no unusual weather conditions, and nothing to prevent the tug from keeping at a safe distance offshore; but the place of stranding was two or three miles inshore from her proper course. *Held*, that the tug was negligent, and liable for the loss of the cargo of the tow.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 17; Dec. Dig. ⊗➔11(5).]

Appeal from the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Judge.

Suit in admiralty by Melville L. Cobb against the steam tug Coastwise; Thomas J. Scully, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 230 Fed. 505.

Frank V. Barns, of New York City (James J. Macklin, of New York City, on the brief), for appellant.

Edward E. Blodgett, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and DODGE, Circuit Judges, and HALE, District Judge.

---

HALE, District Judge. This case comes before the court on appeal from the decision of the District Court for the District of Massachusetts, holding the steam tug Coastwise liable for loss of the coal barge Enos Soule, and her cargo of coal, by stranding on the Brigantine Shoal, east of Atlantic City, N. J., on May 12, 1914.

[1] 1. The claimant, the owner of the barge, contends that he is exonerated from liability for the loss of the cargo by the act of Congress of February 13, 1893 (27 U. S. Statutes at Large, 445, c. 105), known as the Harter Act. He bases his contention upon the first clause of section 3 of that act:

"If the owner of any vessel transporting merchandise or property to and from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damages or loss resulting from faults or errors in navigation or in the management of said vessel."

The claimant relies upon the fact shown in evidence that the tug and barge, and the hawser between them, were owned by the claimant, while the cargo of the barge was owned by the libelant; and the claimant contends that the voyage was undertaken by the tug and the barge, both vessels being owned by the same party, that the object of the voyage was to transport certain coal, that the claimant was performing his part of the contract, and that for the purpose of the voyage the two vessels became as one. He urges that, where a tug and tow are of a common ownership, and are engaged upon a voyage, the sole purpose of which is to transport the cargo laden on a tow, section 3 of the Harter Act applies; and, by force of that section, the tug and the owner are exempted from liability for the loss of the cargo on the tow, occurring through the fault, or errors in navigation, of the tug.

A question of fact arises in this case whether there was any special contract by which the tug and the barge were together chartered. The proofs tend to show that, in the course of the claimant's towage business, no particular tug went with any particular barge; that a barge was towed, sometimes by the claimant's tug, and sometimes by others. This cargo was put upon the claimant's barge, under a bill of lading signed by the captain of the barge; that bill of lading reads: "In and upon the barge called the Enos Soule." No mention of the tug is made in the bill of lading. The learned judge who heard the case in the District Court found, upon all the evidence, that the agreement under which the barge was chartered did not include the tug; and that the claimant was free to tow the barge by any tug at his disposal.

In The Murrell (Boston & Baltimore Barge Co. v. Eastern Coal Co.), 195 Fed. 483, 115 C. C. A. 393, this court held that section 3 of the Harter Act was intended to govern only the relations between a vessel and her cargo. In speaking for the court, Judge Putnam said:

"Clearly on its face the Harter Act had in mind, not so much a broad principle, as only the relations which exist between a vessel and the cargo with which she is herself laden."

In the case then before the court, the tug and the barge were not owned by the same person.

In The Delaware, 161 U. S. 459, 471, 16 Sup. Ct. 516, 522, 40 L. Ed. 771, in referring to the Harter Act, the Supreme Court said:

"It is entirely clear, however, that the whole object of the act is to modify the relations previously existing between the vessel and her cargo. This is apparent not only from the title of the act, but from its general tenor and provisions, which are generally designed to fix the relations between the cargo and the vessel, and to prohibit contracts restricting the liability of the vessel and owners in certain particulars connected with the construction, repair and outfit of the vessel, and the care and delivery of the cargo."

It will be seen that, in The Murrell, this court had before it the case of an agreement by the owner of a tug to tow another owner's vessel; and this court held that there is nothing in such agreement to make the latter vessel, or her cargo, the cargo of the tug. In view of the reasoning of the Supreme Court in The Delaware, it seems clear also that there is nothing in the agreement by the owner of a tug to tow another vessel which can be regarded as making the latter vessel, or her cargo, the cargo of the tug, even when such other vessel belongs to the same owner as the tug. And, in our opinion, this is the law. A careful examination of the language and history of the Harter Act leads us to the conclusion that section 3 is dealing with the specific vessel on which the merchandise is being transported. The Irrawaddy, 171 U. S. 187, 195, 196, 18 Sup. Ct. 831, 43 L. Ed. 130; Ralli v. New York & T. S. S. Co., 154 Fed. 286, 287, 83 C. C. A. 290. A similar case was considered by this court, but not decided, in The Cygnet, 126 Fed. 742, 745, 61 C. C. A. 348.

The proofs in the case at bar, however, present a still stronger case for the libelant. Here the contract of towage was made by the tug; the bill of lading for the cargo was made by the barge. It is clear, then, that, up to the time when the hawser was passed from the tug to the barge, the coal was the cargo of the barge alone. If, then, we follow the claimant's contention, we are compelled to hold that the cargo was at one time the cargo of the barge alone, and at a later time the cargo of the tug as well. We must conclude, as Judge Dodge did in deciding The Murrell, in the District Court, 200 Fed. 826, 831, that it is difficult to believe that Congress intended a construction of the Harter Act leading to such a result. It is true that, for some purposes, the tug may be said to take part in the transportation of the cargo of the barge; and that, where questions of limited liability have arisen, the tug and tow have been regarded as one vessel. It is urged by the claimant that this doctrine has been carried even further. In The Nettie Quill (D. C.) 124 Fed. 667, the District Court for the Southern District of Alabama had before it the fact that the owner of a steamer making regular trips had agreed to transport a locomotive, under a bill of lading in the usual form; he undertook to carry the locomotive on a barge, towed alongside, and belonging to the locomotive's owner. This barge was also covered by the bill of lading. The court held the contract to be one of affreightment, not of towage, and subject to the Harter Act. No such question arises in the case at bar. Here the contract with the tug was clearly a contract of towage. The bill of lading was made with the barge only, not with the tug. There

is nothing to indicate an attempt to combine the tug and barge into a single maritime adventure.

The general rule is stated by the Circuit Court of Appeals in the Second Circuit in The W. G. Mason, 142 Fed. 913, 918, 74 C. C. A. 83, 88, where, in speaking for the court, Judge Wallace said:

"A tug and her tow are deemed a single vessel under steam, within the meaning of the rules of navigation for preventing collisions; but it has never been asserted elsewhere that they could be regarded as one vessel for the purpose of ascertaining their relations as between themselves, or their several liabilities to respond for the consequences of a fault of one of them. Even when two vessels are lashed together, the question of the liability of each always depends upon ascertaining whether that vessel was in fault."

Judge Wallace cited The James Gray v. John Frazer, 21 How. 184, 16 L. Ed. 106; Sturgis v. Boyer, 24 How. 110, 16 L. Ed. 591; The Carrie L. Tyler, 106 Fed. 422, 45 C. C. A. 374, 54 L. R. A. 236.

Upon the proofs in the case at bar, and upon the facts found correctly by the District Court, it is clear, and we must hold, that, within the meaning of the Harter Act, the tug and the barge were not one entity, and the tug Coastwise was not "transporting merchandise or property."

The claimant is not exonerated by the Harter Act from liability for loss of the cargo.

[2] 2. Was the tug at fault for the stranding of the barge?

Upon this point the facts are sufficiently stated by the District Court. The tug was proceeding up the Jersey coast with her tow, in the nighttime, against a wind nearly ahead and tending to set her toward the shore, in weather so misty as to render the shore lights invisible at the ordinary distance. It was clearly the part of good seamanship, under such conditions, to keep well offshore. The warnings of the coast pilot and the experience of navigators clearly pointed out this duty.

We are not unmindful that the contract to tow does not impose the obligation to insure, or the liability of a common carrier; that it requires no more than that he who engages to tow shall exercise the care and skill of a reasonably prudent navigator; and a disaster does not always raise the presumption of fault. The Webb, 14 Wall. 406, 414, 20 L. Ed. 774; The Margaret, 94 U. S. 494, 24 L. Ed. 146; The L. P. Dayton, 120 U. S. 337, 351, 7 Sup. Ct. 568, 30 L. Ed. 669; The Burlington, 137 U. S. 386, 391, 11 Sup. Ct. 138, 34 L. Ed. 731; The J. P. Donaldson, 167 U. S. 599, 603, 17 Sup. Ct. 951, 42 L. Ed. 292. But in the case before us, as in the case of The Webb, supra, the departure of the tug from her true course was enough to devolve upon her the duty of explanation. Under no stress of storm, she ran upon a well-known, well-charted shoal. She shows no operating cause, or accident, sufficient to produce the disaster; she has made no satisfactory explanation. The proofs show that there was nothing to prevent a mariner in the exercise of careful seamanship from keeping out to sea far enough to escape danger. The master of the tug testifies that he did not suppose he was so far inshore as to create a situation which could be called an emergency. In answer to a question by the court, he

said that, if it had occurred to him that the situation was really perilous, he would have changed his course and "gone right to sea." But he says he was "trying to get up the coast in shoal water." In his attempt to make headway, and to "gain on his voyage," we think he did not exercise the care of a prudent mariner. We are satisfied with the conclusion of the District Court in finding the tug at fault.

The decree of the District Court is affirmed; the appellee recovers his costs of appeal.