## SACRAMENTO NAV. CO. v. SALZ.*

(Circuit Court of Appeals, Ninth Circuit.
January 26, 1925.)

No. 4321.

**1. Shipping ⬤➡136—Contract with barge held not to include towing tug; "affreightment contract."**

Bills of lading issued for a barge, which was without motive power, *held* not to constitute a contract of affreightment, which includes the barge and towing tug, as a single vessel, and gives the tug the benefit of the provisions of the Harter Act (Comp. St. § 8029 et seq).

**2. Shipping ⬤➡136—Harter Act held not to relieve tug from liability for negligence in towing barge.**

The Harter Act (Comp. St. § 8029 et seq.) applies only to the relation of a vessel to the cargo with which she is herself laden, and does not relieve the owner of a tug from liability for its negligence in towing a barge on which the cargo is carried.

**3. Shipping ⬤➡140—Exceptions in bills of lading apply only to vessel on which the goods are laden.**

Exceptions in bills of lading issued on behalf of a barge, for goods laden on board, apply only to the barge, and not to a towing tug, not mentioned therein, though it is the property of the same owner, and do not relieve it from liability for negligent towage.

Appeal from the District Court of the United States for the Third Division of the Northern District of California; Maurice T. Dooling, Judge.

Suit in admiralty by Milton H. Salz, doing business as E. Salz & Son, against the Sacramento Navigation Company. Decree for libelant, and respondent appeals. Affirmed.

The appellee brought an action in personam against the appellant, the owner of the steamer San Joaquin No. 4, to recover for negligent towage of a cargo of barley shipped on board the appellant's barge Tennessee at landings on the Sacramento river for transportation to Port Costa. Shipping receipts were issued, which recited that the barley was shipped "on board of the Sacramento Transportation Company's barge Tennessee," to be delivered at Port Costa, "dangers of fire and navigation, or any other peril, accident, or danger of the seas, rivers, or steam navigation, or steam machinery of whatever kind or nature, excepted, with the privilege of reshipping in whole or in part, on steamboats or barges; also with the privilege of towing with one steamer, at the same time, between Sacramento and San Francisco, down or up, two or more barges, either loaded or empty."

*Certiorari granted 45 S. Ct. 509, 69 L. Ed. —.

The San Joaquin No. 4 picked up the Tennessee and three other barges, and on the way to Port Costa came into collision with the British steamer Ravenrock, whereby the barge sank and the appellee's cargo was lost. The appellant, in its answer, alleged that the San Joaquin No. 4 was at all times in all respects seaworthy, properly manned, equipped, and supplied, and that the barge was, while carrying said barley on said voyage, operated by appellant, together with said steamer, as a single carrier of goods and merchandise for hire, and that there was no contract of towage between the steamer and the barge, or between the appellant and the appellee, and pleaded exemption of liability under the Harter Act. On the trial the negligence of the San Joaquin No. 4 was established, and it is not disputed on the appeal. The court below made a finding that the cargo so lost was carried by the Tennessee under a bill of lading issued for it only, and not for the towing steamer, and that, although the towing steamer and the barge belonged to the same owner, the Harter Act did not apply, and held that the appellant was answerable for the loss of the cargo.

Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellant.

E. B. McClanahan, S. Hasket Derby, and Carroll Single, all of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant contends that, the cargo having been loaded on a barge, which became an instrument in the transportation of the cargo only in connection with the tug, the situation was the same as if it had been carried on the tug, and that the relation between the appellee and the appellant was solely one of affreightment. But there was no contract here between the appellee and the barge and the tug. The bill of lading was made with the barge, and did not include the tug, and there is nothing therein to indicate that the tug and the tow were engaged in a common venture. Since the barge had no power of her own, there was an implied contract that a tug would be furnished by the appellant to carry her to her destination. The only express reference to a tug was that the carrier reserved the privilege of towing with one tug other barges in the

course of the voyage, a reservation evidently made to obviate objection to possible delay in transportation caused by the additional load.

We do not regard the situation the same as it would be, had the cargo been carried upon the tug itself. The Supreme Court, in considering the provisions of the Harter Act (Comp. St. §§ 8029–8035) in their relation to the evils which it was intended to obviate, has tended toward a strict construction thereof. The Irrawaddy, 171 U. S. 195, 196, 18 S. Ct. 834, 43 L. Ed. 130; The Delaware, 161 U. S. 459, 16 S. Ct. 516, 40 L. Ed. 771. In The Irrawaddy it was said: "Upon the whole we think that, in determining the effect of this statute in restricting the operation of general and well-settled principles, our proper course is to treat those principles as still existing, and to limit the relief from their operation afforded by the statute to that called for by the language itself of the statute." In The Delaware the court said: "It is entirely clear * * * that the whole object of the act is to modify the relations previously existing between the vessel and her cargo."

The appellant relies upon the decisions of this court in The Columbia, 73 F. 226, 19 C. C. A. 436, and The Seven Bells, 241 F. 43, 154 C. C. A. 43. The first of those cases was decided before the enactment of the Harter Act, and the court had under consideration therein the limited liability statute. Rev. Stats. §§ 4282–4290 (Comp. St. §§ 8020–8027, 8036). It was held that, where the owner of a barge undertook to transport cargo by means thereof and by its own tug, the two vessels became one for the purpose of the voyage, and that the owner was not entitled to limit his liability for damages caused by the negligence of the crew of either without surrendering both. We applied in that case the same rule of strict construction which has been indicated by the Supreme Court in construing the Harter Act. The purport of the decision was that the carrier could not obtain the benefit of the limited liability statute without surrendering the whole means by which it undertook to transport the cargo, thus applying the principle that, where two or more vessels belonging to the same person are engaged in a transportation service under a common direction, all are equally answerable for the negligence of the common head, 24 R. C. L. 1398, and the language of the court in The Main v. Williams, 152 U. S. 122, 131, 132, 14 S.

Ct. 486, 488 (38 L. Ed. 381) where it was said: "The real object of the act in question was to limit the liability of vessel owners to their interest in the adventure. * * * The English courts have held, very properly, we think, that these statutes should be strictly construed."

In The Seven Bells the owner of a barge made a contract with the owner of a tug by which the latter was to make daily trips with the barge, and to haul all freight and express which the owner might furnish. It was held on the evidence that the tug was insufficient in power to handle properly the barge in rough weather, that both vessels were liable for loss of the cargo on the barge when she was cast off by the launch during a high wind, and that the libelant's contract with the owner of the barge, whereby he shipped goods thereon, was not merely one of towage, but for carriage, on which the two vessels became one instrumentality, the owner of the barge being the owner of the launch pro hac vice. It is true that in that case the Harter Act was set up as a defense, but it was not involved in the decision, as the owner of the cargo recovered judgment for his damages on the ground that the tug was insufficiently equipped to handle the barge.

[2] We are of the opinion that the Harter Act applies only to the relation of a vessel to the cargo with which she is herself laden, and does not relieve the owner of a tug from liability for its negligence in towing the barge on which the cargo is carried. Cases directly in point are The Murrell (D. C.) 200 F. 826, affirmed in Baltimore & Boston Barge Co. v. Eastern Coal Co., 195 F. 483, 115 C. C. A. 393; The Coastwise (D. C.) 230 F. 505, affirmed 233 F. 1, 147 C. C. A. 71. In affirming the decision in the case of The Murrell, the Circuit Court of Appeals said: "Clearly on its face the Harter Act had in mind, not so much a broad principle, as only the relations which exist between a vessel and the cargo with which she is herself laden."

The appellant cites The Nettie Quill (D. C.) 124 F. 667. In that case the owner of a steamboat, carrying freight and passengers for hire as a common carrier, contracted to carry a certain steam locomotive, the owner thereof to furnish a barge. The bill of lading stated that the locomotive was shipped on board "the steamboat Nettie Quill and barges." The court held that the agreement was a contract of affreightment, and not one of towage, notwithstanding

that the locomotive was carried on the barge alongside the steamer, and that under the Harter Act the steamer was not liable for loss or injury occasioned by the collision of the barge with an obstruction in the river. In holding that the contract was one of affreightment the court said: "A contract of affreightment is a contract with a shipowner to hire his ship, or part of it, for the carriage of goods or other property." We may point to that expression of the court as the distinguishing feature of the decision. It serves, also, to distinguish that case from the case at bar, for here there was no contract with the tug, and there was no hiring of the tug for carriage of the cargo.

[3] We find no merit in the contention that, irrespective of the Harter Act, the appellant is exempted from liability by the terms of the bills of lading. The bills of lading were issued for goods on board the barge Tennessee. The exceptions therein expressed extend only to dangers of fire and navigation, or any other peril, accident, or danger of the seas, rivers, or steam navigation, or steam machinery, and they apply only to the barge, and not to the tug, or to any other vessel, or to the appellant as the owner of the tug. No tug was referred to in connection with the contract of transportation. The exemption clause, therefore, does not excuse negligent towage. The Steamer Syracuse, 12 Wall. 167, 20 L. Ed. 382; Liverpool & G. W. Steam Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788; Alaska Commercial Co. v. Williams, 128 F. 362, 63 C. C. A. 92; Mylroie v. British Columbia Mills Tug & Barge Co. (C. C. A.) 268 F. 449.

The appellant cites The Oceanica, 170 F. 893, 96 C. C. A. 69, The Maine (D. C.) 161 F. 401, reversed 170 F. 917, 96 C. C. A. 131, and the G. R. Crowe (D. C.) 287 F. 426, affirmed (C. C. A.) 294 F. 506. In The Oceanica it was held that a contract of towage, by which the tow assumes all risks, releases the tug from her own negligence, resulting in injury to the tow. In that case the owner of the tug contracted with the owner of the barge that the tug should tow the barge from Marquette to Buffalo, "the tow to assume all risks." The court, while accepting the rule that a contract will not be construed to cover the carrier's negligence, unless the intention to do so is expressly stated, held, one judge dissenting, that a tug, being only liable for negligence, if the tow agrees to assume all

risks, no risks can be meant, except those for which the tug is liable, viz. the consequences of her own negligence. On rehearing the court said: "We do appreciate keenly that the decision of the majority of the court as to the right of a tug to contract against her own negligence is a departure from previous decisions." We think that it is a departure from the principles announced in the decisions of the Supreme Court which we have cited. It may be said, by way of distinguishing the present case from that of The Oceanica, that in the latter the contract was made between the owner of the tug and the owner of the barge, and that the court found in the terms thereof an intention of the contracting parties to absolve the tug from the consequences of its own negligence, whereas, in the case at bar, the contract is wholly between a shipper of cargo and the owner of the barge on which it was to be carried.

The decision of the case of The Maine was based upon the fact that the lighterage company which furnished the barge and the tug was not a common carrier, but as a private carrier undertook the service under a contract which provided that the shipper should have no claim upon it, or its equipment, or boats which it might charter or control, for any loss of cargo. In The G. R. Crowe it was held that a vessel chartered for full cargo was not a common carrier, but a bailee for transportation, and could, by the express provisions of the charter party, be exempted from liability for leakage. We do not see that either decision casts material light upon the question involved in the present case.

The decree is affirmed.