## THE DUTCHESS.

### SHIPPERS' NAV. CO. v. STANDARD TRANSP. CO. et al.

(District Court, E. D. New York. August 17, 1926.)

No. 7387.

**1. Towage** &#8258;11(7)—**Steamer held solely at fault for collision of its tow with abutment of canal guard gate.**

Steamer with eight canal barges in two sections in tow on Barge Canal *held* solely at fault, because of improper navigation, for collision of one of barges with center abutment of guard gate.

**2. Shipping** &#8258;41—**Charter, giving charterer exclusive possession and control of vessels for specified term at specified hire, made charterer owner pro hac vice.**

Charter, by which charterer hired vessels for specified term at specified hire and assumed exclusive possession, command, and navigation of vessels, and employed all persons managing and operating them, made charterer owner pro hac vice of vessels.

**3. Admiralty** &#8258;28.

A lien is essential for foundation of suit in rem in admiralty.

**4. Towage** &#8258;16—**Charterer of barges acquired no lien for damages to barges against towing steamer, of which it was also owner pro hac vice, and owner, on resuming possession of barges, acquired no lien.**

One cannot acquire lien on his own property, and charterer of canal barges, as owner pro hac vice, could not acquire maritime lien for damages to barges because of fault of towing steamer, of which it was also owner pro hac vice, and owner of barges on resuming possession acquired no lien.

**5. Towage** &#8258;11(2).

Chartered barges in tow and steamer towing them were, for purposes of voyage on which they were damaged, one vessel, operating under common dominion and control.

**6. Insurance** &#8258;606(3)—**Owner of barges, relieving charterer from liability for hull damages, could not hold towing steamer demised to same charterer responsible therefor, and underwriter of hull insurance was in no better position.**

Where owner of barges in tow expressly relieved charterer from liability for damages coverable by hull insurance, it could not hold

towing steamer, demised to same charterer, responsible for hull damages, and underwriter, who paid owner under hull policy, stood in no better position than owner.

**7. Insurance** &#8258;606(3)—**In absence of damages to cargo of barge, underwriter who paid general average charges on cargo was not entitled to subrogation against towing steamer demised to charterer of barge.**

In absence of damages to cargo of barge from collision through fault of towing steamer demised to same charterer, steamer was not liable for cargo loss or damage, and underwriter who paid general average charges on cargo was not entitled to subrogation against steamer.

In Admiralty. Suit by the Shippers' Navigation Company, owner of the barge S. N. No. 18, and as bailee of the cargo of pig iron laden thereon, and as owner of the barge S. N. No. 11, against the steamship Dutchess, her boilers, engines, etc., claimed by the New York Canal & Great Lakes Corporation, and another. Decree for libelees.

Macklin, Brown & Van Wyck, of New York City, for libelant.

Stanley & Gidley, of Buffalo, N. Y., for the Dutchess.

Courtland Palmer, of New York City, for Standard Transp. Co.

CAMPBELL, District Judge. Upon conflicting testimony I find as follows:

[1] The steamship Dutchess, coming east from Buffalo on the Barge Canal, bound to New York, had eight loaded canal barges in tow, made up in two sections, of four barges each. The first section was on a long hawser from the steamship Dutchess, each of the four boats being made fast close up one behind the other. The second section was on a long hawser from the stern boat of the first section, leading to the S. N. No. 11, the head barge of the second section; the S. N. No. 18 being the second boat, each of the four boats being made fast close up one behind the other, and the second section being steered from the head boat S. N. No. 11.

The motor barge Boston Socony, loaded, coming west from New York on the Barge Canal, was bound for Buffalo. On the canal at different points there are guard gates with center abutments, and just to the west of the Indian Castle guard gate, at the south side of the canal, a dredging company was engaged on a dredging contract for the state and had a line of pontoons which almost blocked the southerly draw of the gate, as the pontoons extended up to within 150 feet of the guard gate, extending out so that, if the line of their outer sides had been extended eastward, it would have bisected the

width of the fairway of the southerly draw.

Before the steamship Dutchess reached the dredge, and when the Boston Socony was about 600 feet east of the guard gate, the Dutchess blew a one-whistle signal to the Boston Socony, indicating that the Dutchess wanted to take the southerly side of the guard gate. This signal was answered by the Boston Socony with a one-whistle signal, and the dredge stopped operations to permit the steamship Dutchess and her tow to pass.

The steamship Dutchess was moving at about three miles an hour, and with the first section of her tow passed the pontoons and through the draw without injury; but the second boat of the second section struck one of the pontoons, causing the quarter of the head boat of the second section, the S. N. No. 11, to strike the center abutment of the guard gate a glancing blow, breaking the steering cable and cross-lines between it and the second boat of that section, the S. N. No. 18, which came violently into contact with the center abutment of the guard gate and received the damages of which complaint is made. The Boston Socony passed through the north draw of the guard gate at a speed of from one mile to one mile and a half an hour, and at the time of the collision was well west of the guard gate.

In finding as I have after consideration of all the testimony, I have given great weight to the testimony of Malcolm MacDonald, superintendent of the dredge, who is a disinterested witness and was in the best position to see what happened, and who testified to what he saw. The Mason and The Cascade, 249 F. 718, 720, 161 C. C. A. 628. The Boston Socony was without fault, and it was not the effect of any suction caused by it which was responsible for the injury to the S. N. No. 11 or the S. N. No. 18.

The steamship Dutchess was solely to blame, first, in attempting passage with its long tow through the southern draw of the guard gate, partially blocked as it was by the pontoons which passage it selected and so signaled the Boston Socony; and, second, in going through the draw at such a high speed. The advocate for the steamship Dutchess suggests in his brief some fault on the part of the man steering the second section; but no such fault is charged in its answer, and the evidence does not warrant any finding of such fault. Nor does it follow that there was such a fault simply because the Dutchess was able to take through without injury the barges of the first tier, which were better controlled by her.

I do not find the steamship Dutchess at fault because of the length of her tow, because the evidence shows that was the common method, and but for the attempt to pass through the south draw, partially obstructed as it was, the length of the tow would not have been a source of danger. The damages were caused by the improper navigation of the Dutchess.

[2] Both the barges S. N. No. 11 and S. N. No. 18 and also the steamship Dutchess were under charter to the Empire Canal Corporation by similar charters. Under these charters the charterer hired the vessels for a specified term at a specified charter hire, and assumed the exclusive possession, command, and navigation of the vessels, and all persons employed in the management, operation, and control of the vessels were employees of the charterer and not of the owner, and by such charters the Empire Canal Corporation became the owner pro hac vice of such barges and steamer. Reed v. United States, 11 Wall. 591, 600, 20 L. Ed. 220, Leary v. United States, 14 Wall. 607, 610, 20 L. Ed. 756, United States v. Shea, 152 U. S. 178, 14 S. Ct. 519, 38 L. Ed. 403, and The Del Norte (D. C.) 111 F. 542, affirmed 119 F. 118, 55 C. C. A. 220. I see no distinction, in so far as it applies to the case at bar, between ownership absolutely and ownership pro hac vice.

[3] A lien is essential for the foundation of a suit in rem in admiralty. Benedict's Admiralty (5th Ed.) § 12.

[4] A man cannot acquire a lien upon his own property; therefore the charterer, as owner pro hac vice of the barges S. N. No. 11 and S. N. No. 18 could not acquire a lien upon the steamship Dutchess, of which it was also the owner pro hac vice, and proceed against her in rem for the alleged barge damage. The Del Norte, supra. Inasmuch as the charterer could acquire no lien for such damage, the owner of the barges, on resumption of possession, acquired no lien. The Charlotte (D. C.) 285 F. 84.

[5] The barges and the steamer, by virtue of the charters, were under a common dominion and control, viz. the charterer, and under the maritime law became, for the purpose of the voyage upon which the damages are alleged to have been received, one vessel and constituting a single unit, operating under a common dominion and control. The Northern Belle, 9 Wall. 526, 19 L. Ed. 746; The Columbia, 73 F. 237, 19 C. C. A. 436; Thompson Towing & Wrecking Association v. McGregor, 207 F. 209, 124 C. C. A. 479.

[6] By the ninth paragraph of the charter the owner of the barges S. N. No. 11 and S.

N. No. 18 covenanted to keep the same covered with hull insurance against fire and the usual marine risks, and expressly relieved the charterer from liability for any damage coverable by hull insurance. The damages sought to be recovered in this action are coverable by hull insurance. Therefore the owner of the barges by its contract cannot hold the vessel responsible for such damages, and if the suit is brought for the benefit of the underwriter, who has paid the owner under a hull policy and seeks to recover by virtue of subrogation, it can stand in no better position than the owner of the barges, its insured (Globe & Rutgers Fire Ins. Co. v. Hines [C. C. A.] 273 F. 774, certiorari denied 257 U. S. 643, 42 S. Ct. 54, 66 L. Ed. 413), and the libel cannot be maintained, either for the benefit of the barge owner or of its underwriter.

The second part of the ninth paragraph of the charter of the barges provides that the charterer shall take out tower's liability insurance on all towboats forming part of the fleet and pay the premiums therefor, and that it shall be deemed part of the charterer's operating expenses. The charterer agrees to take out insurance covering the cargo against all usual risk and the charterer and/or vessel against liability of the vessel.

This was a personal agreement by the charterer, and, without expressing any opinion as to what might be the charterer's personal liability, if any, it is sufficient to say that the charterer is not a party to this action, and no determination affecting its rights can be had in this action. As has been said, the damages were coverable by hull insurance.

[7] There is no evidence of any damage to the cargo, but the libelant claims, as bailee of the cargo, that the alleged damage created general average charges against both barges and cargo. No damage having been sustained by the cargo, the steamer is without liability for cargo loss or damage.

If the action be brought for the benefit of the underwriter, who has paid the amount of such general average charges, on the claim of subrogation, it cannot be sustained as against the steamer, since the underwriter, at best, can only stand in the place of the common owner, and therefore can gain nothing by subrogation. Marine Ins. Co. v. McLanahan (C. C. A.) 5 F.(2d) 773.

A decree may be entered dismissing the libel as to both respondents, with costs against the libelant.