### In re O'DONNELL et al.

### Appeal of SPENCER KELLOGG & SONS, Inc.

Circuit Court of Appeals, Second Circuit.
May 14, 1928.

No. 288.

1. Shipping ⊙~136—Tug owner, who had contracted with barge owner to do towing, was relieved under Harter Act, as to damages resulting from collision, by terms of bill of lading issued by barge owner, both being considered single vessel (Harter Act [46 USCA §§ 190–195]).

Where marine company, owning barge, had contracted with petitioner, a tug owner, to do towing, earnings to be divided between them, and marine company issued bills of lading to respondents, containing exceptions for collision and dangers of navigation, petitioners were relieved from liability for collision with lock in canal, under Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035), as well as the marine company, since both tug and barges should be treated as single vessel.

**2. Shipping ⬅️136—Both tug and barges, separately owned, must fulfill conditions of exemption from liability to shipper resulting from collision, under Harter Act (46 USCA §§ 190–195).**

Both tug and barges, owned by different persons, must fulfill conditions of exemption for liability to shipper resulting from collision, under Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035).

**3. Shipping ⬅️137—Vessel must be shown seaworthy when breaking ground on voyage in question.**

Vessel must be shown to be seaworthy when she breaks ground on voyage in question.

**4. Shipping ⬅️136—Where tug and barges are deemed one vessel, under Harter Act, they must be so considered under limitation statute (Harter Act [46 USCA §§ 190–195]; 46 USCA §§ 183, 189).**

Where tug and barges are to be deemed one vessel, under Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035), they must be equally so considered under limitation statute (46 USCA §§ 183, 189).

**5. Shipping ⬅️209(1⅜)—Limitation statute requires person liable for ship's tort to surrender only his own interest in her (46 USCA §§ 183, 189).**

Limitation statute (46 USCA §§ 183, 189) requires person liable for ship's tort to surrender no interest in her beyond his own.

Appeal from the District Court of the United States for the Southern District of New York.

Petition by Spencer Kellogg & Sons, Inc., against Louis O'Donnell and others, to enjoin a libel and limit their liability as owners of the tug Hugh O'Donnell. From the decree (22 F.[2d] 410), respondents appeal. Affirmed conditionally.

The appellants were owners of two cargoes of flaxseed laden on the barges Brennan and Smith, for carriage from Buffalo to Edgewater, N. J., via the Erie Canal. The barges, while in tow of the appellees' tug, Hugh O'Donnell, were brought into collision with a lock in the canal, and both they and their cargo were damaged. Thereupon the appellants filed a libel in rem against the tug, and the appellees a petition to enjoin the libel and limit their liability to the value of the tug. In this proceeding the appellants filed a claim and answer, setting up the same facts as appeared in the libel. The cause came on for trial upon the petition and answer, where. the following facts were disclosed:

A third party, the Marine Transit Corporation, owned certain barges and chartered others, which it used for the transport of grains through the Erie Canal. As it had no tugs of its own, it agreed with the appellees that they should do all its towing, including the return trip eastward after the barges reached Buffalo. The agreement was for the Marine Company to solicit and procure such "freight" as was "agreeable to both the owner of the tug and the carrier or owner of the barge," and to deduct from the gross freights collected "all charges, other than towing, incidental to the earning of that freight," dividing the remainder into equal parts between itself and the appellees. The Marine Company issued bills of lading to the appellants after this agreement had been reached with the appellees. These contained exceptions for collision and the dangers of navigation, and relieved the Marine Company, under the Harter Act (46 USCA §§ 190–195; Comp. St. §§ 8029–8033, 8035), if the barges were seaworthy, and they alone were the vessels transporting the cargoes. The appellees claimed that they also relieved the tug, because by the contract between the Marine Company and themselves both the tug and the barges were to be considered as the transporting vessel.

The appellees at the trial showed that the tug was seaworthy at the end of her westbound trip at Buffalo, just previous to the trip in question, but proved nothing as to the condition of the barges. The District Judge held that the flotilla was to be treated as a single vessel, and that the tug as a part of it was exonerated under the Harter Act. So holding, he dismissed the appellants' claim.

Single & Single and Forrest E. Single, all of New York City (Carroll Single, W. J. Mahar, and Northcutt Ely, all of New York City, of counsel), for appellant.

William F. Purdy, of New York City (George V. A. McCloskey, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). The case confessedly turns upon the doctrine laid down in Sacramento Nav. Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, and followed in The Bathgate, 25 F.(2d) 103, 1928 A. M. C. 233 (C. C. A. 3). In those cases the tug and barge were owned in common and the appellants insist that the doctrine is confined to that situation. Yet it is apparent, we think, that ownership cannot in all cases be the decisive fact; for example, it can hardly be argued that, if the tug had been demised on a bare-boat charter, so as to be in the carrier's possession, it would have made any difference. Nor should we suppose, though the question

is not so clear, that it would, if she were already on a time charter, during which she was at the carrier's orders to use her as he pleased. The reasoning of the decision was that the contract of carriage necessarily included some motive power, the barge being inert, and that the tug was therefore a necessary adjunct to its performance. As such it was a part of the "vessel," in the sense that the contract presupposed more than a mere hulk to lift the goods.

[1] Perhaps the court did not mean to press this argument to the extreme of saying that a mere towage contract would similarly exonerate the tug; at any rate, we may so assume in the case at bar, because the contract here was very different. The cargoes were to be acceptable to the appellees before they were fixed by the Marine Company, though whether that company submitted each one in advance, or was expected to use some latitude of choice, does not appear. All expenses and profits were shared, except the cost of operation of each vessel. Contracts of affreightment made by the Marine Company with the shipper under such an arrangement appear to us to have been made on behalf of both, and both to have been the principals, although one was undisclosed. Whether a partnership resulted is no doubt a nice question, on which we need not pass. When the tug was paid by a proportion of the gross freights, it was held that no partnership arose in The J. P. Donaldson, 167 U. S. 599, 605, 606, 17 S. Ct. 951 (42 L. Ed. 292), and perhaps not even this agreement went so far. Even if it were necessary to pass on that question here, it must be noted that in The J. P. Donaldson, so far as appears, the barge only picked up the tug after lifting the cargo and making the contract of carriage. We hold, however, that a partnership stricti juris is not essential, and that it is enough if the two owners make a joint contract of carriage with the shipper, to the performance of which each lends a necessary vessel. Whatever may be said of situations where the parties less completely unite, this appears to us to be equivalent to a joint ownership in both vessels pro hac vice.

Sacramento Nav. Co. v. Salz, if not a departure from the earlier doctrine, at least settled the law against some earlier decisions. In spite of the guarded language used, it is impossible to suppose that it did not overrule The Murrell (Baltimore & Boston Barge Co. v. Eastern Coal Co.) 195 F. 483 (C. C. A. 1), and The Coastwise, 233 F. 1 (C. C. A. 1). It is true that the opinion formally left these untouched, but only on the theory that the contracts had there been held to be for towage. Since both vessels were owned by a single owner, the decisions certainly can no longer stand on their facts, and were not meant to be approved, as we understand it. Just where the line is to be drawn between the hiring of a tug after the barge has contracted to carry the goods, and a common ownership of both, will probably always remain a matter of degree. At any rate we are not disposed at present to try to fix any general rule. It is enough that the facts here at bar bring this case within what must in any event be the determining considerations.

[2, 3] However, it is plain that both vessels must fulfill the conditions of the exemption. In the case at bar the tug proved that she was seaworthy at the outset of the voyage. The appellants do indeed argue that the proof only extends to the completion of the westbound trip, which ended at Buffalo, just before the voyage began on which the loss occurred. We of course recognize that the vessel must be shown to be seaworthy when she breaks ground on the voyage in question, but we think the record sufficient as respects the tug. It was apparent from the evidence that the purpose of the appellees was to prove that she was seaworthy at the only moment when seaworthiness counted, and if the appellants, who did not even cross-examine the single witness, had meant to raise the question that they had not accounted for the trifling period between the end of one voyage and the beginning of the next, good faith required them to raise the question while there was opportunity to remedy what was at best a formal defect. The same is not true as to the seaworthiness of the barges, as to which no proof whatever was attempted. The record as it stands is defective in this respect, and that proof must be supplied.

[4, 5] Finally, it is argued that the appellees, to limit their liability, must surrender, not only the tug, but the barges, each being by hypothesis a constituent part of the "vessel" exonerated. We agree that, if the tug and barges are to be deemed one vessel under the Harter Act, they must be equally so considered under the limitation statute. The last was decided in The Columbia, 73 F. 226 (C. C. A. 9), a case expressly approved in Sacramento Nav. Co. v. Salz, and indeed used as a basis for the result there reached. There can be no question that, if both vessels had been owned in common, both would have had to be surrendered here. But the limitation statute requires a person liable for a ship's tort to surrender no interest in her beyond his own. On the contrary, it expressly provides

that he shall be exonerated upon surrendering whatever that interest may be. U. S. Code, title 46, §§ 183, 189 (46 USCA §§ 183, 189; Comp. St. §§ 8021, 8028). Thus there is no inconsistency in at once saying that the two vessels are one, and in allowing limitation upon surrender of the tug.

This appeal is a new trial, and we can take proof in this court of the seaworthiness of the barges. Unless the appellants choose to concede the issue, the appellees must make proof before William Parkin, Esq., as commissioner, on whose report the case may be again brought on for final determination. If he finds the barges seaworthy, and his report is confirmed, the decree will be affirmed; otherwise, it will be reversed. The appellees must in any event bear the costs of this reference, but, if the decree is affirmed, the appellants will bear the general costs of the appeal.