## THE R. LENAHAN, JR.
## THE JOHN J. RYAN.
## THE CARLOTTA.

### No. 254.

Circuit Court of Appeals, Second Circuit.
March 9, 1931.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellants Bethlehem Steel Co. and Mary Ryan.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley and Paul L. Clugston, both of New York City, of counsel), for appellant Continental Grain Co.

Single & Single, of New York City (William J. Mahar, of New York City, of counsel), for appellant Thomas Reddy.

Stanley & Gidley, of Buffalo, N. Y. (Arthur E. Otten, of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, CHASE, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

The Iroquois Transit Corporation, the carrier, was in the business of hauling merchandise through the Mohawk River Canal. Having no equipment of its own, or only an insufficient amount, it chartered empty barges and tugs for its purposes. Among the chartered barges were the two in question, whose hire was on a per diem basis; they were bare boats with a bargee in charge, employed and paid by the owners. The tug was small, driven by a Diesel engine, manned by a crew, apparently of only two, also employed and paid by the owner. The carrier made up such tows as it needed, and put the tug in charge, using it at its pleasure without consulting the owner. Her hire was also on a per diem basis, and the charter was oral.

Late in the season of 1926, in November, the carrier secured a cargo of grain for one barge, and of pig iron for the other, for transport from Buffalo to the Hudson, and put the tug in charge. On the way, due to high water which then prevailed, she lost control of the barges, so that they took the ground, and they and their cargoes were damaged. The four libels were filed severally by the owners of the barges and the cargoes; and the circumstances of the grounding were such that the judge charged the tug with fault in her navigation. As the claimant does not in its brief or argument raise any question as to the propriety of this finding, we shall not discuss her negligence.

As to the barges, the tug was exonerated because both she and they were upon demise, "owned pro hac vice" by the carrier. For this reason no lien for negligent towage could arise against her, the notion apparently being that her fault was to be imputed to the tow. As to the cargoes, section 3 of the Harter Act (46 USCA § 192) applied, all the flotilla being treated as a single vessel under the rule in Sacramento, etc., Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663, and In re O'Donnell, 26 F.(2d) 334 (C. C. A. 2). The three vessels being seaworthy, and properly manned and equipped, the faults of the tug's navigation were excused.

We shall assume for argument that all the vessels were demised. There can indeed be no doubt as to the barges. Dailey v. Carroll, 248 F. 466 (C. C. A. 2); Bushey v. Hedger, 40 F.(2d) 417 (C. C. A. 2). As to the tug there is more question. Normally a charter is only a contract of affreightment, when the owner gives the charterer no more than the use of his vessel, on board of which a crew, hired and paid by him, remains, and whose movements they direct. That is however not conclusive, and in The Charlotte, 299 F. 595, we held a charter very like that at bar to be a demise. To be sure, the language of the transfer in that case included the word, "leased," but our decision did not depend upon that, and we think its omission here in an oral per diem agreement is not to be pressed so far. Plainly, there is much practical difference between a small boat, sent hither and yon in restricted waters, under the immediate direction of the charterer, and a ship sailing the seven seas, which the charterer is merely permitted to lade. At any rate, as we think the point not involved in the case at bar, we are content to assume that the tug, like the barges, was under the "control" of the carrier (U. S. v. Shea, 152 U. S. 186, 14 S. Ct. 519, 38 L. Ed. 403), and had therefore been demised. The premises existed for the conclusion of the District Judge.

His theory was that because of the common bailment of all three, there remained for legal purposes but a single personality, and that therefore no rights or liabilities could arise. This is expressly supported by two decisions in The Dutchess (D. C.) 15 F.(2d) 198; Id. (D. C.) 16 F.(2d) 1003, and might perhaps be implied from our own decision in Monk v. Cornell Steamboat Co., 198 F. 472. In that case the injured scow had been de-

mised, and the demisee pressed the tug, not on charter, to undertake dangerous towage. The owner of the scow sued the tug and was defeated because the demisee was "owner pro hac vice." In the circumstances this only meant that the tug was free to accept the demisee's consent to the danger; the case raised no more than a question of the bailee's apparent authority. Third persons were not obliged to question the propriety of his directions, the scow being unconditionally delivered into his possession. When, however, both the injured and the guilty vessels are demised to one bailee, this is not true. The Willie, 231 F. 865 (C. C. A. 2). The fault in that case was of the common demisee's foreman, and it was not imputed to the injured scow. There was no reason why it should be, since the tort-feasor had not relied upon the consent of the bailee. We can see no distinction between this decision and the case at bar.

In principle we can see no reason for merging the personality of the owner into that of the demisee by virtue of a fiction, such as ownership pro hac vice. The transaction is a bailment and the bailee is liable, at least in contract, if he neglects to protect the property. If he owned the tug there could be no question, except as to the form of suit, a matter indifferent in the admiralty. That he personally should be excused if he gets possession of it on demise, is of course impossible, and while it may indeed be a hard rule which imposes liability on a tug for the demisee's fault, as to that we are concluded. A demise makes no difference in collision (The Barnstable, 181 U. S. 464, 21 S. Ct. 684, 45 L. Ed. 954), and negligent towage is equally a tort (The John G. Stevens, 170 U. S. 113, 18 S. Ct. 544, 42 L. Ed. 969). The notion that a thing may be guilty is archaic enough, no doubt an animistic survival from remote times; but once it be granted, it does not comport with convenience or precedent to interject exceptions, based on added irrational fictions. Moreover, while the doctrine has been pressed very far (The China, 7 Wall. 53, 19 L. Ed. 67), it has never, with the exceptions we have mentioned, been extended to the vicarious transfer of fault to an innocent vessel; and indeed, that would contradict even the atavistic conceptions on which the whole theory depends. The Del Norte (D. C.) 111 F. 542, affirmed 119 F. 118 (C. C. A. 9), was not such a case; it decided no more than that a charterer got no lien on the demised vessel through faults of his own

servants. The contrary would surely have been shocking.

We have assumed in the foregoing that the carrier was at fault, which could be true only in case the tug's crew were his servants. In fact, this was probably not the case, but as it makes no difference in the result, we avoid that debatable question by assuming it for the claimant. If they remained the servants of the tug owner, there is even less reason for imputing their fault to the barges. They were not misled by any consent of the carrier which the owner had authorized him to give; they charged their principal and his property as in any other case. We cannot approve the rule laid down in The Dutchess, supra.

As to the cargoes, upon the assumptions we have already made, the decision depends upon a question of fact; that is, whether all the flotilla was seaworthy and well-manned, an issue on which the claimant has the burden. In re O'Donnell, 26 F.(2d) 334 (C. C. A. 2). The proof as to the barges was enough, but we think it failed as to the tug. The currents which she encountered were apparently not usual in spring and autumn, and while the lock-tender opened all the gates at once, and let loose a flood of water, it is at least open to question whether even this presented to her an emergency with which she should not have been able to deal. We are not therefore entirely satisfied that she was fit for the service on which she was engaged, as much a condition of her seaworthiness as that she should be well-found and staunch. Be that as it may, certainly the claimant did not prove, though it alleged, that she was well manned. Her master had not served as such for more than three months, before which he had been an engineer; he held no license save one granted without examination of his fitness; and the record is bare of any other evidence of his competency. In the only instance in which this was put to the test, it failed. Nor can we find any evidence as to the competency of her mate, except that he had been for many years employed in the canal. Section 3 of the Harter Act gives a privilege, excusing the carrying vessel from admitted faults, and all the prescribed conditions must be shown to exist. The District Judge appears to have supposed that the libellant must establish the negative.

Decrees reversed; causes remanded with instructions to enter interlocutory decrees for the libellants.