## LOWERY v. CONNECTICUT FIRE INS. CO. OF HARTFORD, CONN.

### No. 13776.

District Court, E. D. New York.

Dec. 8, 1933.

William J. Mahar, of New York City, for libelant.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for respondent.

BYERS, District Judge.

This is an admiralty cause in personam in which the owner of the Diesel vessel F. A. Lowery and the barge Lowery Sisters seeks to recover from the respondent insurance company the sum of $13,335.91, being the amount of damages fixed in accordance with a decree hereinafter to be referred to, and an additional sum representing counsel fees and disbursements in the latter cause, amounting to $1,773.94, making a total of $15,109.85.

The claim is in contract, based upon an insurance policy issued by the respondent company to W. E. Hedger Company, Incorporated, and/or the Hedger Transportation Company, Incorporated, for account of whom it may concern, and bearing date April 18, 1932.

On April 15, 1932, the Hedger Transportation Company, Incorporated, as charterer, entered into a charter party with the libellant, as owner, in which said Diesel steamer F. A. Lowery and her six consorts, including the Lowery Sisters, were covered for the barge canal season of 1932, at an agreed daily rate for the entire fleet, commencing April 15, 1932.

The owner paid for all provisions, wages of crew and necessary supplies to operate the Diesel vessel and man the barges in the customary manner. It was further provided as follows:

"The charterer further agrees that all cargoes loaded on the said steamer and consorts shall be covered with carrier's legal liability insurance; said insurance shall be paid by the charterer and shall be obtained in such amount as to cover legal liability of the owner and of the steamer and her consorts."

It was agreed that the steamer and barges were to be operated as a unit. Other provisions of the charter party seem to be presently unimportant.

It is contended for the respondent that the charter did not constitute a demise, citing Hansen v. E. I. Du Pont De Nemours & Co. (William P. Donnelly and Barges) 33 F.(2d) 94, 1929 A. M. C. 586 (C. C. A.); as opposed to which view, the libellant relies on The R. Lenahan, Jr. (C. C. A.) 48 F.(2d) 110. The point seems not to require decision, for reasons to be stated.

Three days after the said vessels were chartered, the insurance policy in question was procured, and in form covers both cargo insurance and carrier's legal liability; it was an open policy under which declarations were to be filed, and the paragraph having to do with the latter form of insurance provides in reference thereto as follows:

"28. This policy also to cover the legal liability of the Assured as owners, operators, charterers, carriers, wharfingers, forwarders, freighters, etc., howsoever arising as to all cargoes at any time at the risk of the Assured, transported and/or intended to be transported between any of the points or places heretofore described in Paragraph 7 and the dates set forth in paragraph 9 hereof. The assured agreed to report all cargo carried between the aforesaid places to the company and pay the premium for this coverage as to all such cargo. The company admits the seaworthiness of all vessels as between the assured and the company as to the legal liability coverage and the company further agrees that this legal liability coverage shall include all attorneys fees and legal costs arising from the defense of any liability so incurred by the Assured hereunder. The company shall not be liable for any loss with respect to legal liability, unless the loss amounts to Twenty-five ($25.00) Dollars, each shipment separately insured."

Many, if not all, of the provisions of the policy are more appropriate to cargo liability than to that pertaining to carriers.

Paragraph 36, somewhat relied upon by the respondent, is as follows:

"36. Wherever in this contract the term 'assured' is used, it shall be deemed to mean and to refer to and include in addition to the named assured, the owners of the above described cargoes, where such cargoes are insured hereunder, in the same manner as though this policy were specifically issued to such owner or to the legal holder of certificates issued under and by virtue hereof. Where the insurance herein is only against the legal liability of the named insured the term 'assured' shall be deemed to mean and to refer to and include the corporation or corporations named herein as parties hereto."

Under date of April 28, 1932, a declaration under the policy was made by the Hedger Transportation Company and initialed by the marine underwriter of the respondent, and accepted by the latter, reading:

"Carpinter & Baker's Agency
3 South William Street
New York

"April 28th, 1932.
"Insurance is wanted by Hedger Transportation Company, Inc., et al. 286/325 (the number of this policy)
"For account of Whom it may concern
"Loss payable to Assured or order
"On carrier's legal liability on account of cargoes of wheat, Buffalo to New York, as follows:—

"Barge 'Frank A. Lowery'    9,500 bus.    $ 6,080.00
"  "    "     *     *    *    *     *    *    *    *
"  "    "   'Lowry Sisters'   20,500 bus.    13,120.00
"  "    *     *     *    *    *     *    *    *    *
"From 26th day of April 1932
"Amount Insured, $81,088   Rate 10¢   Premium $81.08
    "Entered

                                    "J. B."

(The initials are said by the testimony to be those of Jack Beebe, the underwriter in Carpinter & Baker's office.)

It seems that the Diesel vessel F. A. Lowery and her barges, operating for the account of the Hedger Transportation Company, carried a cargo of grain from Buffalo to New York, which was the property of the Norris Grain Company and which was laden in Buffalo about April 26, 1932.

While the flotilla was en route to New York, being in the Hudson River at North Troy, the barge Lowery Sisters was sunk on May 5, 1932, because of striking a bridge abutment at that place, and her cargo became a total loss. As a result, the Norris Grain Company instituted in admiralty a proceeding in this court against the Hedger Transportation Company and the steamer F. A. Lowery which was towing the barges, in which damages were sought to be recovered for the loss of the cargo by reason of the

said sinking, and the Hedger Transportation Company, Incorporated, having previously gone into bankruptcy, defaulted in the said cause, and it proceeded to trial against Frank A. Lowery, who appeared as claimant of the steamer F. A. Lowery. Such proceedings were had therein that a decree was entered in this court in favor of that libellant on April 26, 1933, providing that the Norris Grain Company should have a recovery from the canal steamer F. A. Lowery, her claimant and stipulators, of the amount of damages sustained by reason of the circumstances hereinbefore related, and a commissioner was appointed to assess damages.

Thereafter the amount of damages was stipulated and, as the result, on May 8, 1933, a final decree was granted, whereby the said Norris Grain Company was awarded damages from the steamer, her claimant and stipulators, amounting with interest and costs to $13,335.91, and it does not appear that an appeal was ever taken from that decree.

Thus it will be seen that the legal liability of the carrier has been duly established, which was the happening against which the insurance policy was procured, but the insurer resists recovery herein on the theory that Frank A. Lowery was not an insured under the policy and therefore the loss should not be visited upon it. The contention in terms is that the respondent "denies that there is or ever was any basis of liability to libellant on the part of the respondent under the aforesaid policy * * *."

The respondent also pleads that the claim for cargo damage established in the said litigation was compromised and settled for a sum substantially less than that named in the final decree, whereby the respondent's liability in any event would be limited to the amount actually paid to the Norris Grain Company on settlement, plus reasonable counsel fees and disbursements.

That aspect of the controversy will be referred to later.

Presently the question is whether the libellant is entitled to recover under the policy, as being comprehended within the expression "for account of whom it may concern." The legal effect of that clause has been the subject of numerous decisions in cases not involving legal liability insurance, and apparently there is no disposition on the part of the respondent to question the general rule that such words protect anyone having title to the property (where the policy covers property) at the time of the loss, although not named in the policy, provided it may be shown that his interest was within the contemplation of the party procuring the insurance.

The general rule was stated, for instance, in Hagan v. Scottish Union & National Insurance Co., 186 U. S. 423 (22 S. Ct. 862, 865, 46 L. Ed. 1229), at page 430, by Mr. Justice Peckham, who says, after referring to Hooper v. Robinson, 98 U. S. 528 (25 L. Ed. 219):

"The facts in that case differ materially from those presented by this record, but the meaning of the language 'on account of whom it may concern' is stated in the opinion of the court, and authorities are therein cited which show that it is not necessary that at the time of effecting the insurance the person taking it out should intend it for the benefit of some then known and particular individual, but that it would cover the case of one having an insurable interest at the time of the happening of the loss, and who was intended to be protected at the time the party took out the insurance.

"In 1 Phillips, Insurance, it is stated:

" 'Sec. 385. The rule, that an insurance "for whom it may concern" will avail in behalf of the party for whom it is intended, does not mean that any specific individual must be intended. * * * But he may intend it for whatever party shall prove to have an insurable interest in the specified subject, in which case it will be applicable to the interest of any person subsequently ascertained to have such an insurable interest, who adopts the insurance.' "

The respondent concedes the rule to be as above stated, but asserts that it does not apply to liability insurance because the latter is different, since the subject-matter is intangible—personal in character and confined to the parties mentioned in the policy by name or other descriptive term; that this libellant is neither named nor otherwise designated in the policy and accordingly it is the legal liability of Hedger only that is covered, unless the libellant shows that he had an interest in the legal liability thereof; that, because of his failure to do so, it must be held that he was concerned only with his own legal liability and not with that of the charterer, and consequently that the phrase "for account of whom it may concern" may not be availed of by him in this action.

No authority is quoted for the foregoing contention, nor does it seem to be fortified by inherent reason or to be founded in any consideration save that of a reluctance to respond to the engagements of an insurance policy.

For present purposes, there seems to be

no requirement for over-refinement in distinguishing between a contract to compensate one who pays a premium for insurance against a loss occasioned by a failure to perform a carrier's legal duty, and a loss arising, for instance, from a fire or from a peril of navigation; it is open to an insurance company to refuse such a risk as this; however, having undertaken it in consideration of the payment of an agreed sum of money, it is difficult to perceive why the obligation should be evaded when a loss has taken place, for the reasons suggested by the respondent.

It may be admitted that the legal liability contemplated by the policy would be incident to the so-called personal service of carrying cargo; but it is equally clear that, unless the phrase "for account of whom it may concern" be read out of the policy and the declaration made under it, the attention of the insurer was called to the fact that these words were intended to indicate Hedger for and on behalf of anyone who might have an insurable interest in the performance of the carrier's duty.

The declaration by its terms brings within this precise policy, the vessels F. A. Lowery and the Lowery Sisters, and the Libellant's Exhibit 3 comprises certificates of inspection made by surveyors in Buffalo on April 25, 1932, *acting for the insurer*, of the F. A. Lowery and the Lowery Sisters, and, as to both, Frank A. Lowery, this libellant, is described as the owner, and the operator is described as W. E. Hedger & Co.

Three days after these inspections, the declaration above referred to was made and accepted, and it is difficult to conclude from the foregoing anything but that the parties to this contract by their actions interpreted the contract to mean that the carrier's legal liability, the subject-matter of paragraph 28 of the policy, was understood to be that of W. E. Hedger Company, Incorporated, or Hedger Transportation Company, Incorporated, as charterer, and Frank A. Lowery as owner, with reference to cargoes of wheat described in the declaration.

The thing insured was the cargo, and the contingency against which insurance was effected was the visitation upon the insured of legal liability for failure to perform the duties of carrier.

If the foregoing is sound, it results that the owner of the barge Lowery Sisters had an insurable interest in the due performance of the carrier's duty and consequently in the legal liability of the carrier for failure to perform that duty; and, if that be true, the Connecticut Fire Insurance Company must respond to him under the terms of its policy.

In opposition to the foregoing, it is further urged that paragraph 36 affords the insurance company a way out by reason of the language quoted, namely, that, in connection with the legal liability of the named insured, "the term 'assured' shall be deemed to mean and to refer to and include the corporation or corporations named herein as parties hereto."

That cannot avail because of the presence of the words "for account of whom it may concern." Unless the latter are to be disregarded, the said provisions of paragraph 36 do not affect the engagement of the respondent, because manifestly the W. E. Hedger Company, Incorporated, and the Hedger Transportation Company, Incorporated, were included, and it did not require the quoted provisions of paragraph 28 to accomplish that; but the fact that they are included does not mean that they could not contract for insurance for the account of someone else, namely, a person—the libellant—having an insurable interest in the subject-matter of the policy.

The general conclusion arrived at is in harmony with the result reached in the case of O'Donnell v. Marine Transit Corporation, 146 Misc. 502, 261 N. Y. S. 588, 591, 1932 A. M. C. 1520, tried in the State Supreme Court and recently affirmed by the Appellate Division of the Second Department. 240 App. Div. 840, 266 N. Y. S. 982. In that case, the Marine Transit Corporation chartered barges and tugs in connection with its cargo carrying business, and the plaintiff in that action provided the tug to tow certain barges which were the property of the former, from Buffalo through the canal; Marine Transit agreed to cover the cargo with carrier's liability insurance for the benefit of the plaintiff, the cost to be borne equally by the parties. A policy was issued to the Marine Transit Corporation covering its carrier's liability "on account of whom it may concern."

A cargo of the Spencer-Kellogg Company was taken to Buffalo in a tow which consisted of the plaintiff's tug and the Marine Transit Corporation's barges and, in the course of the trip, two barges were damaged and the cargo lost. Action against the tug owner was instituted in a Federal Court, resulting in a decree in favor of the cargo owner, which was paid. Thereupon this action was brought by the former and the court found that the tug owner had an insurable in-

 

terest, in part because it had agreed to pay one-half of the cost of the insurance and to share equally in the profits of the voyage, which indicates a difference in degree but not principle from the facts here presented. The opinion contains the following:

"Inasmuch as the plaintiffs had an interest in the subject of the insurance and the assured had agreed to protect them by obtaining insurance, then as a matter of law the policy taken out must be deemed to be for the benefit of the plaintiffs. In other words, an inference is created that the insurance was taken out in accord with the agreement made between the parties. The authorities are all in accord on this proposition."

In this case, as has been stated, the charter party between the Hedger company and Lowery provided for legal liability insurance to be paid for by the charterer, and that must be deemed to have been one of the elements upon which the figure for charter hire was based; and the opinion quoted from indicates that no difference was perceived between a legal liability policy and any other policy of insurance in connection with the clause "for account of whom it may concern."

At this trial, an officer of the Hedger Transportation Company was called as a witness and was asked whether, at the time that he executed the declaration, it was his intention to cover the libellant as owner of the steamer F. A. Lowery and the barge Lowery Sisters, under the policy in suit. He answered in the affirmative.

That question was objected to on the ground that the declaration could not change the scope of the original policy, but the argument of the objection covered a wider range and was to the effect that the intent of the Hedger company in procuring the policy could not be shown. Decision was reserved at the trial, but it may now be considered that the objection is overruled with exception to the respondent. See Hagan v. Scottish, etc., Co., supra.

The evidence was not admitted upon the theory that the intent under which the declaration was procured enlarged the contractual relation of the parties; the declaration was already in evidence and, for the purpose of this decision, it has been treated as one of the acts of the parties pursuant to, and in performance of, the original contract of insurance.

The libellant therefore is entitled to a decree, and it becomes necessary to determine the amount of his recovery.

For the respondent, it was established to the satisfaction of the court that, subsequent to the entry of the decree, Lowery, the present libellant, settled his loss for the sum of $9,000.00 on the 12th of January, 1933, and no evidence was offered by the libellant to the contrary. It is unnecessary to relate the somewhat complicated method by which this result was accomplished, because it is clear that such was the outcome, and, in the absence of evidence to the contrary, that will be regarded as the measure of the libellant's loss as the result of the sinking of his barge containing the grain in question.

It was also stipulated, without prejudice to the respondent's denial of any liability, that the reasonable counsel fee involved in the defense of the case of the Norris Grain Company against this libellant was $570.00, including disbursements, and accordingly the libellant may take a decree for $9,570.00 with interest from January 12, 1933.

Settle decree on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to incorporation.