## SOUTHERN STATES TOWING LINES, Inc., v. LEE TRANSIT CORPORATION.

## THE COMANCHE.

### No. 405.

Circuit Court of Appeals, Second Circuit.

July 21, 1944.

Foley & Martin, of New York City (Christopher E. Heckman and James A. Martin, both of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

PER CURIAM.

The libelee has appealed from an interlocutory decree of the District Court for the Eastern District of New York for charter hire and damages for injuries caused to libelant's tug "Comanche" while being used in heavy ice in the Connecticut river. The

present issue is whether the damages so caused by ice may be recovered.

The libelant orally chartered the tug fully manned to the libelee in December 1941 for a period of thirty days with an option to renew the charter for a like period. This charter was later confirmed in writing. The libelee used the tug for the term and exercised its renewal option. After that, and in the latter part of January 1942, it sent the tug with an oil barge in tow from Gulfport, N. Y. to Middletown, Conn. This trip was within the charter limits.

Previous to it the owner had notified the charterer that the latter would be held responsible for any damage caused the tug by using it for "breaking and ploughing through ice."

The master of the tug, who was employed and paid by the libelant but was acting under the orders of the charterer on the trip to Middletown, was directed by the latter to stop at Saybrook, Conn., and pick up a pilot who would take charge of the tug when he came aboard. This was done and the pilot thereafter was in charge of the tug on the trip to Middletown and its return to Saybrook the next day, January 23, 1942. On the return trip the tug, having the empty oil barge on two short hawsers, encountered such heavy ice that at times her headway would be stopped and the pilot in spite of the protests of the master would back up and ram into the ice to break a passage through. In so doing the tug was damaged and arrived at Saybrook with a leak in her forward fuel tank.

The trial judge found on adequate evidence that, although it was customary to break ice on such a trip in winter, it was negligent to use the tug to break such heavy ice and we accept that finding. He then held the charterer liable for the damages which were caused by the negligent navigation with which the master failed to interfere except by protest.

We agree. It is not necessary to decide whether this informal charter amounted to a demise. Unquestionably the master was bound to follow the orders of the charterer when the latter directed him to take aboard a pilot who would navigate the tug. Thus the charterer of right put the tug in charge of its authorized agent and the master was superseded by that agent during the time the tug was damaged. It is true as the charterer argues that the taking on of a pilot does not divest the master of a ship of all his authority and thereby relieve him of the over-all responsibility for its navigation. The China, 7 Wall. 53, 19 L.Ed. 67; Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, S. A., 2 Cir., 32 F.2d 209; Jure v. United Fruit Co., 5 Cir., 6 F.2d 6. But this doctrine, applicable to vessels which sail the high seas with officers and crews under the direction of the owner and not of the charterer, is not to be extended to include small vessels like this tug whose master could be, and was, displaced by the charterer. Compare, The R. Lenahan, Jr., 2 Cir., 48 F.2d 110.

Having elected to put its agent in charge of navigation of the tug, the charterer relieved the master of responsibility for that and become liable for the damages caused by its own agent's negligence. When those damages are proved they should be confined, of course, to the ice damage and should include no loss of charter hire for time consumed in making repairs not so made necessary.

Decree affirmed.